STATE v. SARVIS.

1. ARSON—STAT. CONSTRUED.—A person cannot be convicted of arson for burning his own dwelling house either at common law or under Criminal Statutes, 1893, sec. 140, even when burning is done for purpose of defrauding an insurance company.
2. IBID.—ACCESSORY.—A person cannot be convicted in this State as accessory to the crime of arson for procuring another to burn his own dwelling.

Before GARY, J., Horry, spring term, 1895. Modified.

*Messrs. W. D. & J. W. Johnson & Quattlebaum*, for appellant.

*Solicitor J. M. Johnson*, contra.

March 6, 1896. The opinion of the Court was delivered by

MR. CHIEF JUSTICE MCIVER. The indictment in this case contained two counts—the first charging that the defendant "did feloniously, wilfully, and maliciously set fire to, and caused fire to be set to, a certain house, to wit: a dwelling house there situate of one John D. Sarvis, in which the Farmers' Mutual Fire Association then and there had an interest, to wit: a policy of insurance, and by the kindling of such fire the aforesaid dwelling house was then and there feloniously, wilfully, and maliciously burned and consumed, against the form of the statute in such case made and provided, and against the peace and dignity of the State. The second count of the indictment charged that the said John D. Sarvis, "with intent to defraud the Farmers' Mutual Fire Association, a corporation under the laws of said State, which then has [had?] issued a policy of insurance on the dwelling house hereinafter named, did feloniously, wilfully, and maliciously counsel, hire, procure, and command one Alva Sarvis to feloniously, wilfully, and maliciously set fire to a certain dwelling house of the said John D. Sarvis there situate, and by the kindling of said fire aforesaid, so set as aforesaid by the said Alva Sarvis, upon the hiring, commanding, and procurement of the said John D. Sarvis, as aforesaid, the aforesaid dwelling house was then and there feloniously, wilfully, and maliciously burned and consumed; the said policy of insurance being then and there of force, outstanding in favor of the said John D. Sarvis for a large sum of money, to wit: for the sum of $550; and so the jurors aforesaid, on their oath aforesaid, do say that the said John D. Sarvis then and there, in the manner and by the means aforesaid, feloniously, wilfully, and maliciously did commit the crime of arson, against the form of the statute in such case made and provided, and against the peace and dignity of the State." A motion was made before his Honor, Judge Er-

nest Gary, to quash the indictment, when his Honor ruled
that the motion must be granted as to the first count in
the indictment, but must be refused as to the second count.
From this ruling both parties have appealed—the State
alleging error in holding the first count bad, and the de-
fendant alleging error in holding the second count good.

I propose first to consider the appeal on behalf of the
State, which raises the question as to the validity of the
first count in the indictment, in which the defendant is
charged with arson, in "feloniously, wilfully, and malic-
iously" burning his own dwelling house. There can
be no doubt that a person cannot be convicted at
common law of the crime of arson in burning his
own dwelling house; and this I understand to be conceded.
For the definition of that offense, as given in 2 Bish. Crim.
Law, sec. 8, is, "the malicious burning of another's house;"
and this is sustained by citations in the notes from standard
authorities; and as is said by the same author in sec. 12:
"Arson is an offense against the security of the habitation
rather than the property. When, therefore, we say that
the house burned must be another's, the meaning is, that
it must be another's to occupy. Consequently, at common
law, a man cannot commit arson of his own house, even
when it is insured;" citing *Rex* v. *Spalding*, 1 Leach, 218;
2 East P. C., 1025; *Rex* v. *Proberts*, 2 East P. C., 1030;
with other cases, to which may be added Breeme case, 2
East P. C., 1026; Isaacs' case, 2 East P. C., 1031. See, also,
*Snyder* v. *People*, 26 Mich., 106, reported also in 12 Am.
Rep., 302, where Judge Cooley used this language: "Arson
is an offense against the habitation, and regards the posses-
sion rather than the property. The house, therefore, must
not be described as the house of the owner of the fee, if, in
fact, at the time, another has the actual occupancy, but it
must be described as the dwelling house of him whose
dwelling it then is." In that case, the indictment charged
the defendant with burning the dwelling house of Mary A.
Snyder, who was, at the time, the wife of the defendant,

and the syllabus of the case, which is fully sustained by the opinion of the Court, reads as follows: "A husband living with his wife, and having a rightful possession jointly with her of a dwelling house which she owns, and they both occupy, is not guilty of arson, by the common law, in burning such dwelling house; and the rule is not changed by a statute securing to the wife the separate property." From these authorities, as well as others that might be cited, it is very obvious that the gist of the common law offense of arson is the injury of the *habitation*, and not to *the property* constituting the habitation; and if a person voluntarily chooses to destroy his own habitation, either by fire or otherwise, he does no such unlawful act as would constitute arson. Indeed, if the building burned is only his own habitation, I do not see that, in any sense, his act can be regarded as unlawful, inasmuch as a person may do with his own as he pleases, provided in so doing he does not injure the property of his neighbor. If, however, a person sets fire to his own dwelling house, with intent to burn the dwelling of his neighbor, and the house of his neighbor takes fire and is burned, it is quite possible that he may be convicted of arson. But as there is no such allegation in this indictment, it is unnecessary to consider further such a hypothesis. But if a person sets fire to his own dwelling house, with an intent simply to injure or destroy his neighbor's *property*—not his habitation—he certainly could not be convicted of arson, although he might be responsible for the damages done to his neighbor's *property*. It is contended, however, that the common law in respect to arson has been changed by statute; and now a person may be indicted for arson, in wilfully and maliciously burning his own dwelling house. The statute relied on for this purpose is incorporated in sec. 140 of the Criminal Statutes, 2 Rev. Stat., 311, which reads as follows: "The wilful and malicious setting fire to or burning any house, of whatever name or kind, within the curtilage or common enclosure of any house or room wherein persons habitually sleep, whereby any such dwell-

ing house or sleeping apartment shall be endangered; also the wilful and malicious setting fire to or burning any court house or other public building, whether owned by the State or a corporation, or a building owned by an individual or individuals, and kept or left for public meetings or exhibitions, barn, stable, coachhouse, storehouse, ginhouse, warehouse, grist or sawmill, railroad depot, coach or cotton factory, or other house used for manufacturing purposes, of whatever name or kind, or setting fire to or burning any house habitually used for public religious worship, shall be deemed arson, whether the setting fire to or burning be in the day or night time," the section proceeding to prescribe the punishment for such offense. It seems to me that the sole object of the statutory provision above quoted, which was originally enacted in 1861 (12 Stat., 862), was simply to enlarge the character of the houses which could be subjects of arson, and not to make any other change in the recognized definition of that offense. At common law, the only buildings which could be the subjects of arson were dwelling houses, or other structures appurtenant thereto and within the curtilage thereof. The language used in the statute—"any house, *of whatever name or kind*"—clearly implies that such was the purpose of the statute. At common law, the character of the houses which could be the subjects of arson were limited to dwelling houses, or houses appurtenant thereto and within the curtilage; but by statute, the class of houses which could be the subject of arson are enlarged, so as to embrace "any house, of whatever name or kind, within the curtilage or common enclosure of a dwelling house, or within the curtilage or common enclosure of any house or room wherein persons habitually sleep, whereby any such dwelling house or sleeping apartment shall be endangered," whether the same be appurtenant to such dwelling house or sleeping apartment or not. So that the burning of a store or livery stable, which was in no wise appurtenant to the dwelling house or sleeping apartment, if within the common enclosure, whereby such dwelling

house or sleeping apartment would be endangered, would constitute the crime of arson. And then the statute proceeds to enlarge still further the class of houses which would be the subjects of arson, so as to embrace court houses, or any other public buildings, railroad depots, and the various other houses designated in the statute. The words, "any house," relied on in the argument, especially when followed by the words, "of whatever name or kind," certainly cannot be construed as designed to so totally change the definition of the crime of arson, as to subject a person, who burns his own house, located in the centre of a field, too far distant from the houses of another to endanger them in the slightest degree, to the punishment of arson, no matter what may be the motive of such person for destroying his own property. As to the allegation in the first count of the indictment, with respect to the so-called interest of the Farmers' Mutual Fire Insurance Association in the dwelling house alleged to have been burned by the defendant, I am at a loss to conceive what effect it could possibly have upon the validity of this count of the indictment. After alleging that the defendant did set fire to a certain house, to wit: "a dwelling house there situate, of one John D. Sarvis," these words follow: "in which the Farmers' Mutual Fire Insurance Association then and there had an interest, to wit: a policy of insurance." This certainly does not amount to an allegation that the building which was burned was the dwelling house or habitation of the insurance company, for, on the contrary, the distinct allegation is, that such building was the dwelling house of the defendant; and the further allegation, that the insurance company had an interest therein, even if not contradicted by the explanation of such interest, would amount to nothing; for even if the insurance company did have an interest *in the property* (which I don't think it had), that would not affect the question, as it was held in Spalding's case, 1 Leach, 258—extracted from 2 East P. C., 1025—that a mortgagor in possession, burning his own house, could not be convicted of arson, either at

common law or under the statute, 9 Geo. 1, ch. 22, which is not of force here. Besides, there is no allegation in the first count of the indictment that the defendant burnt his own house with intent to defraud the insurance company. But even if there was such an allegation in this count, I do not see how, in the absence of any statute upon the subject, it could affect the present inquiry. In England, there is a statute making it felony without benefit of clergy for a person to burn his own house, with intent to defraud "his majesty or any of his majesty's subjects, or any body corporate," and the case of *Rex* v. *Gilson*, Russ & Ryan Ci. Cases, 102, was a prosecution under that statute, in which defendant was charged with burning his own house, with intent to defraud an insurance company. Similar statutes have been enacted in several of the States of this Union; but, so far as I am informed, we have no such statute in this State, and in the absence of any such statute, I am unable to see how the fact that a person has burned his own house, with intent to defraud an insurance company, renders him liable to an indictment for arson or any other felony. The fact that it has been found necessary in England, and several of the States of this Union, to enact special statutes to cover a case of this kind, affords an additional reason for the correctness of my view. I agree, therefore, with the Circuit Judge in holding that the defendant could not be convicted of arson under the first count in the indictment.

Coming, then, to the question presented by the appeal on behalf of the defendant, it seems to me that it follows necessarily from what has already been said, that the second count in the indictment is also fatally defective. Without going over the argument already presented to show that it is no offense against the criminal law for one to burn his own dwelling house, even for the purpose of defrauding an insurance company which has issued a policy thereon, it will be sufficient to cite the case of the *State* v. *Haynes*, 66 Me., 307, reported also in 22 Am. Rep.,

569, which in principle is so much like the case in hand as to justify liberal quotations therefrom. In that case the defendant, who was a servant of Mrs. Ingraham, was indicted for arson, under Rev. Stat., ch. 119, sec. 1, in feloniously, wilfully and maliciously burning, in the night time, the dwelling house of Mrs. Ingraham. "The evidence tended to prove, and the jury must have found, that the dwelling house of Mrs. Ingraham was burned in the night, under the following circumstances: The house was insured by Mrs. Ingraham. Being insured, Mrs. Ingraham, her daughter, and the defendant conspired together to burn the house for the purpose of obtaining the insurance * * * The question presented for determination is whether, upon the facts, the indictment can be sustained under Rev. Stat., ch. 119, § 1, which is in these words: 'Whoever wilfully and maliciously sets fire to the dwelling house of another, or to any building adjoining thereto, or to any building owned by himself or another, with the intent to burn such dwelling house, and it is thereby burned, in the night time, shall be punished with death.' * * * In some States the common law has been modified, as in New York, where the wilfully setting fire to or burning any inhabited dwelling in the night time is made arson, so that the offense may be committed by one's burning his own dwelling house. So in England, the British Parliament has so modified the law in relation to arson, as to render it immaterial whether the house burned be that of the offender himself or a third person. *Shepherd* v. *The People*, 19 N. Y., 537; Stat. 1, Vict., ch. 89, § 3; *Rex* v. *Ball*, 1 Moo. C. C., 30. * * * If Mrs. Ingraham had burnt her own dwelling, she would not have been amenable to the penalties prescribed by sec. 1. The fire was set at her instance, and for her supposed benefit. The servant obeying cannot be more guilty than the master commanding. The precise question before us arose in Tennessee (*Roberts* v. *State*, 7 Cold., 359), and it was there held, that it was not arson to procure one's own house to be burned, and that the guilt of the agent was

only coextensive with the guilt of the principal. It is not arson for a man to burn his own house, or to procure it to be done, for the purpose of defrauding an insurance company." Upon the same principle it is clear that the second count in the indictment fails to state such facts as would constitute the offense of arson, notwithstanding the fact that, in the second count, the defendant is charged with having procured the burning of his own dwelling house, "with intent to defraud the Farmers' Mutual Fire Insurance Association," which had issued a policy of insurance on said dwelling house, for the reason that there is no statute in this State, as there is in England, as well as in some of the other States of the Union, making it a felony to burn one's own dwelling house with intent to defraud an insurance company. If, therefore, as has been shown, a person cannot be charged with arson in setting fire to his own dwelling house, for the reason that it is not unlawful for a person to burn or otherwise destroy his own property, unless in so doing he injures or destroys the property of his neighbor, it is difficult to conceive how he could be accessory to any crime, when the act is done by another, by his own procurement. If it is no crime for him to do the act himself, it cannot be to procure or command it done by another. It is true, that there are cases in which one may be accessory before the fact to a crime committed by another, which the party charged may be incapable of committing—as, for example, a female may be an accessory before the fact to the crime of rape committed by a man upon another female. But in such a case the party charged as accessory is incapable *physically* of doing the act which constitutes the crime, and if she procures the act to be done by one who is physically capable, the law regards the act as done by herself. Still, even in such a case, the act done must be a crime in the person who actually does the act; and if it is not, then there can be no accessory. So that, in this case, if it would be no crime in John D. Sarvis to burn his own house, in his own proper person, he could not be accessory before the fact, if the act

of burning was done through the agency of another, by his command or procurement. I cannot, therefore, agree with the Circuit Judge in holding that the second count in the indictment was good; but, on the contrary, think that both counts were fatally defective.

The judgment of this Court is, that the judgment of the Circuit Judge that the first count in the indictment be quashed, must be affirmed, and his judgment sustaining the second count must be reversed, and that the indictment be quashed.