TURNER *v.* STATE.

Opinion delivered November 6, 1922.

1. ARSON—BURNING ONE'S OWN HOUSE.—Under Crawford & Moses' Dig., § 2417, making it a felony wilfully and maliciously to burn one's own house, the offense is committed where one burns his own house maliciously in the sense of an intention, with bad motive, of violating the law.

2. ARSON—BURNING ONE'S OWN HOUSE.—Crawford & Moses' Dig., § 2417, making it a felony wilfully and maliciously to burn one's own house, does not conflict with any natural right of one to do what he will with his own.

3. Arson—sufficiency of evidence.—Evidence *held* sufficient to warrant a jury in finding that a fire was of incendiary origin, and that defendant set the house on fire.

4. Witnesses—impeachment of accused on cross-examination.— It was not error to permit the State, on cross-examination, to cross-examine defendant concerning the finding of stolen property in his house where the inquiry was limited to the question as to his credibility as a witness.

5. Witness—cross-examination.—Where, in a prosecution for arson, defendant testified that his act in removing bedclothes from the burned house before the fire was done pursuant to a demand by a committee of citizens that he clean up his premises, it was proper to permit the State to cross-examine him as to whether the admonition of the citizens did not refer to his stopping unlawful and immoral practices, including the unlawful sale of whiskey.

6. Criminal law—conduct of trial.—It was not error in a felony trial for the court, over defendant's objections and on denial of his request that the jury retire, to suspend the trial to instruct the jury commissioners for the next term as to their duties in selecting jurors who would enforce the criminal laws, no reference being made to the trial or the merits of the pending case.

Appeal from Little River Circuit Court; *James S. Steel,* Judge; affirmed.

*June R. Morrell,* for appellant.

*J. S. Utley,* Attorney General, *Elbert Godwin* and *W. T. Hammock,* Assistants, for appellee.

McCulloch, C. J. Appellant was convicted under an indictment charging him with the crime of arson, committed by burning his own house, which was situated in the town of Ashdown.

Under the former statutes of this State it was decided by this court in *State* v. *Hanna,* 131 Ark. 129, that the burning of one's own house did not constitute the crime of arson, but subsequently the Legislature enacted a new statute on the subject (Acts of 1919, p. 66, Crawford & Moses' Digest, § 2417), which reads as follows:

"Every person who shall wilfully and maliciously burn or cause to be burned any dwelling-house or other house, although not herein specifically named, the prop-

erty of himself or of another person, shall be deemed guilty of a felony, and upon conviction shall be imprisoned in the State Penitentiary for a period of not less than two nor more than ten years.''

It did not constitute arson at common law for a person to burn his own house (2nd Wharton on Crim. Law, § 1051), but our statute, quoted above, undoubtedly enlarges the definition so as to make it arson for a person to burn his own house. There can be no doubt about the meaning of the language used in the statute, and we perceive no reason why a statute to that effect should be held to be invalid. Of course, the burning must be maliciously done—that is to say, malicious in the sense of an intention, with bad motive, of violating the law. *Shotwell v. State,* 43 Ark. 345. Similar statutes have been upheld as valid in other States. *State v. Rohfrischt,* 12 La. Ann. 382; *Shepherd v. People,* 19 N. Y. 537; *State v. Hurd,* 51 N. H. 176; *State v. Cohn,* 9 Nev. 179.

It was within the power of the Legislature to define the crime of arson and declare what elements should constitute that offense, and it does not conflict with any natural right of man to ''do what he will with his own'' by making it an offense to wilfully and maliciously burn his own property. We entertain no doubt therefore as to the validity of the statute.

It is next contended that the evidence is not sufficient to sustain the verdict.

Appellant owned two adjoining buildings in the town of Ashdown, one of which he occupied himself, the first floor as a grocery store and the second floor as a rooming-house. The other building was occupied by appellant's tenant, a colored woman by the name of Susie Hart. Appellant is a negro himself.

The fire broke out in the early hours of the morning, before daybreak, and the alarm was given by appellant, who, according to the testimony of some of the witnesses, was fully dressed in the same clothes that he had worn the day before and during the early hours of the night.

The fire was first discovered to be in the part of the building which was occupied by appellant. The origin of the fire was not proved, and appellant did not undertake to show how it started.

The proof adduced by the State tended to show that appellant had a very small stock of goods in his store, and that he carried an excessive amount of insurance on the buildings. There was proof to the effect that the buildings were not worth more than six or seven hundred dollars and that he carried about $2,700 insurance.

Susie Hart and her daughter both testified that shortly before the fire appellant repeatedly approached Susie on the subject of taking out insurance on her household goods in the building, and they testified that he said the houses were ".compelled to burn." He made an offer to Susie Hart, according to the testimony, to take out insurance in the sum of $2,000, and that if she would agree to give him half of it in case of loss by fire he would pay the premium. Two of the witnesses testified that appellant stated that he knew he was going to the penitentiary and that he was "not going to leave anything here for nobody to enjoy."

A man named Marsh owned a livery stable, or barn, which was located immediately back of appellant's buildings. Marsh was a farmer, living in the country, and he testified that, shortly before the fire, appellant approached him on the subject of taking out insurance, and came to see him two or three times on the subject, informing him (witness) that he was in touch with some insurance companies that would give him insurance on his building.

Another circumstance shown by the State as tending to show bad intention on the part of appellant was that the day before the fire he sent out all the bedclothing in his rooming-house to be washed, and it was not in the building on the night of the fire. Appellant undertook to explain this by saying that a committee had visited his place and told him that he must "clean up" the premises,

that he understood this admonition literally and acted upon it. The State undertook to draw out from him the statement that the admonition by the citizens was not meant literally, but that he must put a stop to immoral and unlawful practices in his house.

We are of the opinion that the evidence was sufficient to warrant the jury in finding that the fire which destroyed appellant's house was of incendiary origin, and that appellant was the one who set it on fire.

The State introduced a witness, Roberta Brown by name, who testified about the alarm of fire being given, and also testified concerning the statements alleged to have been made by appellant to Susie Hart with reference to insurance on the building. This witness testified that, after the fire occurred, appellant came to see her and asked her "not to tell any more than she had to." This testimony was elicited by questions repeatedly propounded by the prosecuting attorney, and after calling her attention to her testimony before the grand jury. The witness first appeared not to be able to remember very well, but after attention was called to her testimony before the grand jury, for the purpose of refreshing her memory, she stated that she had had such a conversation with appellant as that mentioned above. There was no objection interposed by appellant's counsel to the course of examination by the prosecuting attorney, but on cross-examination counsel interrogated the witness as to why she had not, before her memory was refreshed by the questions of the prosecuting attorney, remembered this conversation with appellant. The reply of the witness was that she had forgotten about it. Counsel then asked the witness the question whether or not she had made that statement before the grand jury, and the prosecuting attorney objected. Appellant's counsel insisted that he had a right to go into the question of the witnesses' testimony before the grand jury, for the reason that the prosecuting attorney had refreshed the memory of the witness on that subject. The statement of the court in ruling on the objection was that the witness had admitted

that she made the statement before the grand jury, and that that should be the end of the examination on that subject. Counsel then made this statement, apparently to the court, "I will ask her that," and then asked the witness, "Did you or not?" The question appeared not to be clear to the witness, and the court interposed by propounding the question: "The written statement read there, did you make that statement before the grand jury?" Answer: "Yes sir." She was further questioned by counsel for appellant as follows: "How long did it take you to tell the grand jury about that conversation you and Jess had?" Answer: "I don't know."

This ended the cross-examination, and there were no exceptions saved to any ruling of the court.

It is insisted here, for the first time, that the court erred in not permitting counsel to interrogate the witness concerning the testimony before the grand jury, but, as before stated, it does not appear from the record that the court denied appellant the privilege of asking any question on the subject that his counsel saw fit to propound.

Again, it is urged that the court erred in permitting the State to interrogate appellant, on cross-examination, concerning the finding of stolen property in his house. That inquiry was limited, of course, to the question of appellant's credibility as a witness, and the State undertook to go no further than his own answers on that subject. There was no error in this ruling, for the finding of property in appellant's house known to have been stolen might or might not affect his credibility, and the State had the right to place the circumstance before the jury by interrogating appellant himself concerning it.

It is also insisted that the court erred in permitting the State to prove that appellant's house had been searched by a deputy sheriff for whiskey. The record does not sustain appellant in this contention, and a further discussion is therefore unnecessary.

Another contention is that the court erred in permitting the prosecuting attorney to interrogate appellant on cross-examination concerning a visit to appellant of certain white citizens of the town, and the admonition given to him by them to the effect that he must "clean up" his premises and quit selling whiskey. The record does not show that any direct, specific questions was propounded about selling whiskey, but, even if the questions propounded did embrace that inquiry, it was invited by appellant's statement that he had sent out his bedclothing to be washed, pursuant to this admonition, and the prosecuting attorney, as we have already shown, had the right to show that the admonition by the citizens did not have reference literally to washing the premises and its contents, but to clean it up by stopping unlawful and immoral practices, including the unlawful sale of whiskey. There was no error committed by the court in permitting the prosecuting attorney to draw out from appellant just what he had been directed to do by the committee of white people, inasmuch as appellant had already testified on that subject, and thus invited the inquiry concerning it.

Finally, it is insisted that the court erred in delivering its instructions to the jury commissioners in the presence of the trial jury in this case.

It is shown by the record that, after the completion of the testimony in this case and the attorneys were to begin the arguments, the court suspended proceedings in this case until it could appoint and charge the jury commissioners who were to select the jury for the next term of court. This was done over objection of appellant, and the record shows that he requested that the jury retire during the court's instructions to the commissioners. This request was denied, and the court proceeded to instruct the jury commissioners concerning their duties, among other things admonishing them as to their duty to select good men who would enforce the law. The record recites that the court, in its instructions to the commissioners, in the presence of the trial jury in this

case, directed their attention to the increase in various crimes and "instructed them that so long as people do not enforce the law the courts could not expect to check the crime wave that is now sweeping the country."

It does not appear that the court, in its charge to the jury commissioners, made any reference, either directly or indirectly, concerning the trial of this case or the merits of the case. There was nothing said or done by the court which could reasonably be construed by the members of the trial jury as having reference to this case. It was a matter of discretion with the trial court as to when he should suspend other proceedings to appoint and instruct the jury commissioners, and, unless it be shown that the court said or did something that was calculated to prejudice appellant's right before the trial jury, there is nothing which calls for a reversal of the judgment.

We are of the opinion that the evidence is sufficient in this case to sustain the verdict, and that there is no prejudicial error in the record. The judgment is therefore affirmed.