**STATE of Utah, Plaintiff and Respondent,**

v.

**Michael George DURANT, Defendant and Appellant.**

**No. 18051.**

Supreme Court of Utah.

Nov. 15, 1983.

Nancy Bergeson, Salt Lake City, for defendant and appellant.

David L. Wilkinson, Atty. Gen., Earl F. Dorius, Asst. Atty. Gen., Salt Lake City, for plaintiff and respondent.

DURHAM, Justice:

In this case the defendant appeals from a conviction of aggravated arson, a second degree felony. In a statement to the police, the defendant admitted setting a house on fire, but claimed that he was acting under the direction of the owner of the house. In his appeal the defendant claims that under U.C.A., 1953, § 76–6–103 the owner could not have been convicted of aggravated arson for setting fire to his own home. Therefore, the defendant argues that he should not have been convicted of aggravated arson because he was acting as the owner's agent. We disagree and affirm the conviction.

The defendant's argument depends upon his assertion that an owner who sets fire to his own house cannot be convicted of aggravated arson. The statute reads as follows:

Aggravated arson.—(1) A person is guilty of aggravated arson if by means of fire or explosives he intentionally and unlawfully damages:

(a) A habitable structure; or

(b) Any structure or vehicle when any person not a participant in the offense is in the structure or vehicle.

(2) Aggravated arson is a felony of the second degree.

U.C.A., 1953, § 76–6–103 (1978 edition). The defendant points out that at common law it was not unlawful to burn one's own dwelling. *See, e.g.,* 5 Am.Jur.2d *Arson* § 23 (1962); Annot., 17 A.L.R. 1168 (1922). The provisions of the Utah Criminal Code, however, supersede the common law. U.C.A., 1953, § 76–1–105 (1978 edition). The statute regarding aggravated arson is one of three sections that deal with arson. The previous section defines arson:

(1) A person is guilty of arson, if, under circumstances not amounting to aggravated arson, by means of fire or explosives, he unlawfully and intentionally damages:

(a) Any property with intention of defrauding an insurer; or

(b) The property of another.

(2) A violation of subsection (a) is a felony of the third degree. A violation of subsection (b) is a felony of the third degree if the damage caused exceeds $5,000 value; a class A misdemeanor if the damage exceeds $1,000 but is not more than $5,000 value; a class B misdemeanor if the damage caused exceeds $250 but is not more than $1,000; any other violation is a class C misdemeanor.

U.C.A., 1953, § 76–6–102 (1978 edition). Reckless burning is also defined:

(1) A person is guilty of reckless burning if he:

(a) Recklessly starts a fire or causes an explosion which endangers human life; or

(b) Having started a fire, whether recklessly or not, and knowing that it is spreading and will endanger the life or property of another, either fails to take reasonable measures to put out or control the fire or fails to give a prompt fire alarm; or

(c) Damages the property of another by reckless use of fire or causing an explosion.

(2) A violation of subsections (a) and (b) is a class A misdemeanor. A violation of subsection (c) is a class A misdemeanor if damage to property exceeds $1,000 value; a class B misdemeanor if the damage

to property exceeds $500 value; and a class C misdemeanor if the damage to property exceeds $50 value. Any other violation under subsection (c) shall constitute an infraction.

U.C.A., 1953, § 76–6–104 (1978 edition). Both the arson and reckless burning statutes distinguish "the property of another" from other types of property. The aggravated arson statute makes no reference to ownership of property in proscribing damage by fire to "a habitable structure" or "any structure or vehicle" when it is occupied. Nevertheless, the defendant contends that the statute should be construed as if it read "the habitable structure of another." The defendant points to the word "unlawfully" in the statute and argues that the arson statute, § 76–6–102, defines what conduct is unlawful. Thus, the defendant incorporates the provisions of § 76–6–102, *Arson*, into § 76–6–103, *Aggravated Arson*, claiming that aggravated arson is simply arson, i.e., damage with the intent to defraud or to damage the property of another, when the property is habitable or occupied. The defendant cites no case law or legislative history to support this construction of the statute. Neither does the defendant explain why "unlawfully" in the arson statute should be internally defined, but the same word in the aggravated arson statute should be defined by the provisions of the arson statute. The defendant's only justification for this construction is that it preserves the common law concept of arson. However, a review of the statutes which preceded the current code indicates that our legislature did not intend to exclude the burning of one's own property from the statutes.

Under Utah's earliest statutes, as under the common law, arson was a crime against possession rather than ownership of property.

To constitute arson it is not necessary that a person other than the accused should have had ownership in the building set on fire. It is sufficient that at the time of the burning another person was rightfully in possession of, or was actually occupying such building or any part thereof.

Compiled Laws of Utah, § 119–40–8253 (1917). Arson was defined as "the wilful and malicious burning of a building with intent to destroy it." Compiled Laws of Utah § 119–40–8248 (1917). "Maliciously burning in the night time an inhabited building in which there is, at the time, some human being, is arson in the first degree; all other kinds of arson are of the second degree." Compiled Laws of Utah, § 119–40–8254 (1917). Thus, even when the Utah statute closely followed the common law, ownership of the property was a secondary consideration. The primary concern was for danger to human life.

In 1931, the Utah legislature enacted new statutes that classified arson as first, second and third degree arson according to the likelihood of danger to human life. Rather than attempt a general definition of when and under what circumstances lives might be endangered by burning structures, this statutory scheme distinguished the three degrees of the offense by specifying the particular property burned. First degree arson was the willful and malicious burning of a dwelling or any other building "that is parcel thereof, or belonging to or adjoining thereto, *whether the property of himself or of another.*" U.C.A., 1943, § 103–6–1 (emphasis added). Second degree arson was even more explicit in penalizing the willful and malicious burning of "any church, meetinghouse, courthouse, school, jail or other public building, or any public bridge" as well as "any barn, stable, garage or other building, *whether the property of himself or of another,* not a parcel of a dwelling house; or any shop, storehouse, warehouse, factory, mill or other building, *whether the property of himself or another.*" U.C.A., 1943, § 103–6–2 (emphasis added). Section 103–6–3, third degree arson, dealt with the willful and malicious burning of various structures not considered to be buildings, crops in storage or in the field, piles of fuel or building materials, and various types of vehicles. The application of this statute, however, is specifically limited to property worth $25 or more that is the *property of*

*another.* In summary, it is apparent that the most severe penalty was intended to reach those who burned structures likely to be occupied, regardless of ownership or actual occupancy, while the least severe penalty was imposed for damage to various kinds of personal property belonging to another.

This scheme was used in the Model Arson Law proposed by the National Board of Fire Underwriters in 1953. *See* Model Penal Code § 220.1 comment 1 at n. 15 (1980). However, a system of classification by type of property has a number of weaknesses.

For example, the burning of an empty, isolated dwelling could lead to a 20-year sentence, while setting fire to a crowded church, theater, or jail was a lesser offense with a 10-year maximum. The destruction of a dam, factory, or public service facility was regarded as less serious than destruction of a private garage on the grounds of a suburban home. It also makes little sense to treat the burning of miscellaneous personal property, whether out of malice or to defraud insurers, as a special category of crime apart from the risks associated with burning. To destroy a valuable painting or manuscript by burning it in a hearth or furnace cannot be distinguished criminologically from any other method of property destruction. Moreover, the treatment of attempt as the same two-year felony no matter what the nature of the crime attempted seriously undercuts the grading scheme.

*Id.* at 8–9. In 1973, the Utah legislature revised the Criminal Code. By referring explicitly to "habitable structures" and the actual presence of a person, the current arson statutes preserve the classification of the offense according to degree of danger to human life while eliminating many of the inconsistencies associated with the previous method. The most severe penalty is still intended to reach those who burn structures likely to be occupied, regardless of ownership or actual occupancy. The absence of the words "property of another" from the aggravated arson statute is entirely consistent with the legislature's earlier treatment of the offense. There is no reason to assume that the omission of those words was inadvertent. Neither is there any necessity for contriving a definition of "unlawfully" in order to superimpose common law notions on the plain words of the statute. A fire poses unique hazards. As a means of destruction, it is difficult to control and may quickly spread to nearby buildings or fields. Firemen and policemen are endangered. Neighbors and passers-by, fearing that a structure is occupied, may attempt hazardous rescue efforts. It is the apparent intent of the legislature that persons who create these risks should suffer a heavy penalty.

■ This is not to say that the statute absolutely prohibits an owner from setting fire to his own property. Section 76–6–103 states that the person is guilty only if he acted "intentionally and unlawfully." "A person engages in conduct: (1) Intentionally . . . when it is his conscious objective or desire to engage in the conduct or cause the result." U.C.A., 1953, § 76–2–103(1) (1978 edition). Thus, the person who carelessly burns a pile of trash in a high wind, setting fire to his own home or another's, might be found guilty under the reckless burning statute, but could not be found guilty of aggravated arson. Similarly, a homeowner who accidentally sets fire to his garage with his welding torch could not be said to have "intentionally" damaged a habitable structure. The word "unlawfully" also limits the reach of the aggravated arson statute. Although the term is not defined by statute, it appears often in the Criminal Code meaning without justification, license or privilege. *See, e.g.,* U.C.A., 1953, § 76–6–201(3) (1978 edition). Many municipalities have fire safety regulations. *See, e.g.,* Revised Ordinance of Salt Lake City, Utah § 15–1–10, *et seq.* (1974). If a property owner complied with such regulations, obtained any necessary permit, notified the fire department, warned the neighbors, obtained assistance in organizing safety precautions, or assured an adequate supply

of water, an owner could demonstrate the lawful nature of his activity.[1]

The availability of such a defense does not, as the dissent argues, impermissibly shift to the defendant the burden of proof of an element of the crime of aggravated arson. The situation is analogous to the treatment of any affirmative defense such as self-defense in a prosecution for assault or homicide. The unlawfulness of a defendant's actions, when they are prohibited by the criminal statute, may be shown by evidence of the actions themselves, unless and until evidence is offered by either party that raises the possibility of lawful justification for the acts. The State at all times continues to carry the burden of proving the absence of an affirmative defense or, as in this case, the unlawfulness of a burning of property. The dissenting opinion's argument appears to rest in the end on the assumption that it is per se lawful (absent malice) to burn one's own property under Utah law. We disagree and hold herein that the legislature may properly declare such a burning unlawful and that it has done so in our statute.

In the instant case the defendant, who was in possession of the house, and his friend apparently fired some shots in the kitchen very late one night. The friend then left, and the defendant apparently used a fire accellerant to set the house on fire. There is no suggestion that the fire was accidental or that there was any justifiable or beneficial purpose for the fire that occured at approximately 1:50 a.m. The defendant intentionally created the risk that neighbors, firefighters and policemen would be exposed to danger, all without any demonstrated justification or lawful purpose.

It may be felt that the imposition of the penalty for a second degree felony is too harsh when no person was actually in the structure or actually injured by the fire.[2] However, the decision to extend broad protection to all habitable structures, in order to avoid the risk to human life posed by fire, is a policy decision that the legislature is competent to make. "It is the power and responsibility of the Legislature to enact laws to promote the public health, safety, morals and general welfare of society, and this Court will not substitute our judgment for that of the Legislature with regard to what best serves the public interest." *Bastian v. King,* Utah, 661 P.2d 953, 956 (1983) (citation omitted). *See also West Jordan v. Morrison,* Utah, 656 P.2d 455 (1982).

The Utah legislature is not unique in including as part of its aggravated arson statute a presumption that any intentionally set fire in a habitable structure poses danger to human life. In Arizona, aggravated arson is also a second degree felony: "A person commits arson of an occupied structure by intentionally and unlawfully damaging an occupied structure by knowingly causing a fire or explosion." Ariz. Rev.Stat.Ann. § 13–1704 (1982 Supp.). By definition, occupied structure "includes any dwelling house, whether occupied, unoccupied or vacant." Ariz.Rev.Stat.Ann. § 13–1701(2) (1978). There are no Arizona cases that limit or alter the straightforward language of the statute. In Ohio, the aggravated arson statute includes both "substantial risk of serious physical harm to any person" and "physical harm to any *occupied* structure." Ohio Rev.Code Ann. § 2909.02

1. The dissent argues that "unlawfully" is the equivalent of the word "maliciously," which requires that "the burning be done to injure another in the house or the property of another in the house." Section 103–6–1 of U.C.A., 1943, predecessor of the current aggravated arson statute, included the word "maliciously" as did the second degree arson statute. In 1973, the legislature deliberately omitted the term. The rest of the statute is consistent with this omission: (1) the "habitable structure" need not be occupied, U.C.A., 1953, § 76–6–101(2) (1978 edition), and (2) there is no requirement that the property be that of another. It is not the function of this Court to amend the legislature's revision.

2. The defendant was found guilty of aggravated arson, a second degree felony, but was sentenced to a third degree felony penalty under the provisions of U.C.A., 1953, § 76–3–402(1) (1978 edition). This statute allows the trial court to impose a sentence appropriate for the next lower category of offense if the circumstances as a whole warrant.

(Page Supp.1982) (emphasis added). The Ohio definition of "occupied structure" is even broader than the Arizona definition, including not only dwellings but also any structure or vehicle occupied as a temporary or permanent habitation or adapted for overnight accommodation "*whether or not* any person is actually present." Ohio Rev.Code Ann. § 2909.01 (Page 1982) (emphasis added). The Committee Comments following this definition emphasize that "[t]he definition's general concept is that the actual or likely presence of a person in a structure, regardless of the nature of the structure itself, creates a more serious risk of harm from commission of arson ... and thus warrants more severe treatment of offenders." In its comments following the definition of aggravated arson, the Ohio legislature expressed a rationale that could apply also to the Utah statute:

> [T]he section represents a significant shift in emphasis from the way in which the relative severity of arson offenses was formerly determined, by using the degree of danger to persons as the key factor and placing only secondary reliance on the kind of property involved in the offense.

Ohio Rev.Code Ann. § 2909.02, Committee Comment (Page 1982). These statutes became effective in 1974. Research reveals no cases since then that construe these statutes to apply only to property of another or only when another person is actually present.

Other states have enacted similar legislation. The Minnesota first degree arson statute penalizes anyone who damages a building "used as a dwelling ... whether the inhabitant is present therein at the time of the act or not, or any building appurtenant to ... a dwelling whether the property of himself or of another." Minn.Stat. § 609.561(1) (1982). Subdivision (2) of the statute applies the same penalty to one who burns any other type of structure when a person is actually present in the structure or "[t]he circumstances are such as to render the presence of such a person therein a reasonable possibility." Minn.Stat. § 609.-561(2) (1982). The Minnesota statute is broader than the Utah statute in that the Utah statute presumes the reasonable possibility of the presence of another in any *habitable* dwelling, but requires the actual presence of a person in any *other* structure. There are no cases that alter or limit the application of the Minnesota statute. *See also* Del.Code Ann. tit. 11 § 803 (1979). The first degree arson statute in Connecticut similarly proscribes the burning of an inhabited building or any building that "the person has reason to believe ... may be inhabited" *as well as* intentional damage that *actually* injures a person. Conn.Gen. Stat. § 53a–111 (1983). The Connecticut statute also includes as first degree arson the circumstances when "at the scene of such fire or explosion a peace officer or firefighter is subjected to a substantial *risk* of bodily injury." Conn.Gen.Stat. § 53a–111(a)(4) (1983) (emphasis added). The Utah statute presumes such a risk whenever a habitable structure is involved.

The Oregon legislature took a slightly different approach in 1971 when it defined first degree arson as damage to "protected property of another" or to "any property, whether his own or another's, and such act recklessly places another person in danger of physical injury or protected property of another in danger of damage." Or.Rev. Stat. § 164.325 (1981). Section 164.305(1) defines "protected property" as "any structure, place or thing customarily occupied by people, including 'public buildings' ... and 'forest land'." The Criminal Law Revision Commission commented:

> The aim of the Commission is to protect human life and safety by enhancing the degree of arson to first degree when the property involved is a building, structure or thing of a kind which is typically occupied by people. The risk to human life or safety is especially great where such property is set afire .... The following guidelines are meant to aid in interpreting the phrase "customarily occupied by people" as it is used within the definition of "protected property" .... [A] building, structure or thing is customarily occupied by people if:

(a) By reason of circumstances of time and place when the fire or explosion occurs, people are normally in the building, structure or thing; or

(b) Circumstances are such as to make the fact of occupancy by persons a reasonable possibility.

Because it will normally be a jury question whether the state has proved that the building, structure, or thing is "customarily occupied," the jury will be appropriately instructed that if they find it is customarily occupied the crime would be first degree arson ....

*State v. Perez,* Or.App., 13 Or.App. 288, 508 P.2d 833, 834 (1973) (quoting Criminal Law Revision Commission Final Draft of July, 1970) (upholding submission to jury of whether an unoccupied camper in a parking lot at 2:20 a.m. on a summer night was "customarily occupied by people" and affirming the first degree arson conviction). Thus, the Oregon statutes do not require *actual* occupancy, but do not presume, as do the Utah statutes, that damage by fire to any habitable structure creates a risk of danger to human life.

Still another approach is used in New York. The statutes defining first degree arson (explosions) and second degree arson (fire) specify guilt when a person intentionally damages a building when "(a) another person who is not a participant in the crime is present in such building at the time, *and* (b) the defendant knows that fact *or* the circumstances are such as to render the presence of such a person therein a reasonable possibility." N.Y.Penal Law §§ 150.15, 150.20 (McKinney Supp.1982) (emphasis added). Thus, the aggravating element depends on neither the type of structure nor ownership of property, but rather on the defendant's actual or constructive knowledge of the presence of another. *See also*

N.Y.Penal Law § 150.15, note 1 (McKinney 1975) (listing older New York cases holding that "[a]rson in the first [now second] degree may be committed by one in burning his own dwelling-house.") The New York third degree arson statute provides that "[a] person is guilty ... when he intentionally damages a building or motor vehicle by starting a fire or causing an explosion." N.Y.Penal Law § 150.10 (McKinney Supp. 1982). The statute then sets out specific defenses:

In any prosecution under this section, it is an affirmative defense that (a) no person other than the defendant had a possessory or proprietary interest in the building or motor vehicle, or if other persons had such interests, all of them consented to the defendant's conduct, *and* (b) the defendant's sole intent was to destroy or damage the building or motor vehicle for a lawful and proper purpose, *and* (c) the defendant had no reasonable ground to believe that his conduct might endanger the life or safety of another person or damage another building or motor vehicle.

*Id.* (emphasis added). The practice commentaries following this section note that "destruction by fire or explosives of one's own building is only permitted under safe conditions and for a lawful purpose." N.Y. Penal Law § 150.10 (McKinney 1975). Thus, the New York code limits the application of the first and second degree arson statutes by requiring the defendant's actual or constructive knowledge of the presence of another, and limits the third degree arson statute by providing affirmative defenses based on the demonstration of safe and lawful conduct. *See also* Ala.Code §§ 13A–7–41 to –43 (1982); Del.Code Ann. tit. 11 §§ 802–804 (1979); Mo.Rev.Stat. §§ 569.040, –.050 (1978).[3]

---

**3.** With the exception of the Delaware statutes (1953) and the New York statutes (1965, amended 1971, 1979), all the statutes referred to have been enacted since 1970. This is to be expected as most states have extensively revised their criminal codes within the last decade. The dissent relies on many older cases, some of which were written as early as mid-

nineteenth century. These cases, which construe statutes since repealed and amended according to contemporary thought and policy, appear to be of limited utility in determining the intent of the Utah legislature in 1973. We note that statutory construction from another jurisdiction must always be secondary to the plain meaning of the statutes enacted in this

In summary, it is clear that many states have shifted the emphasis in arson law from a system classifying the offense according to type or ownership of the building to a system based on probability of danger to human life. Some of these states, including Utah, have incorporated a presumption of danger to human life whenever a habitable structure is damaged by an intentionally set fire or explosion without inquiry into the actual intent or knowledge of the accused.[4] We have held that it is the intent of the legislature to penalize more severely any person who intentionally damages by fire a habitable structure or structure actually occupied by a person, without regard for whether that structure is owned or possessed by the accused. We have also held that application of the aggravated arson statute is limited by the words "intentionally" and "unlawfully," which require that the burning be other than accidental or careless and that the damage be without justification and contrary to safety precautions. Therefore, in the absence of evidence indicating accident or lawful purpose and safety measures, an owner of property may be convicted of aggravated arson for the burning of his own property under U.C.A., 1953, § 76–6–103 (1978 edition). The defendant's argument that he cannot be convicted because he acted at the owner's direction is without merit.

The defendant relies on *State v. Christendon,* 205 Kan. 28, 468 P.2d 153 (1970), in which the Kansas Supreme Court held that a defendant who set fire to a hotel at the owner's request could not be convicted of first degree arson because the owner could not be convicted of first degree arson. This case is inapposite. The Kansas first degree arson statute clearly requires damage to "the property of another person." *Id.* at 29,

468 P.2d at 155. We have held that the comparable Utah statute includes all habitable structures regardless of ownership.

The judgment of the trial court was correct, and we affirm.

OAKS and HOWE, JJ., concur.

STEWART, Justice (dissenting):

The construction which the majority places on the aggravated arson statute makes it patently unconstitutional in my view; it also renders the legislative scheme for dealing with crimes of arson illogical and subject to abuse. Accordingly, I dissent.

In brief, the majority opinion reverses the burden of proof on a key element of the aggravated arson statute, in violation of the federal and Utah Constitutions and in violation of the provisions of the criminal code. In addition, it changes the legislative scheme with respect to the crime of arson for the purpose of defrauding an insurer and builds the rationale for its construction of the aggravated arson statute without reference to the reckless burning statute, U.C.A., 1953, § 76–6–102, which addresses directly the majority's concern for the threat that fire poses to the safety of others. Furthermore, under the arson statutes as construed by the majority, a person who burns his habitation to defraud his insurer is guilty of the same crime as one who destroys his habitation by fire for a perfectly valid reason with no threat to any person or any person's property.

This case and the companion case of *State v. Clark and Savage,* Utah, —— P.2d —— (No. 17739, filed November 15, 1983), demonstrate that prosecutors will inevitably file charges under the aggravated arson statute (with its lesser burden in proving

jurisdiction. References to the arson statutes from other states are given here to indicate the wide variety of treatment of this offense even within those states with a similar approach.

4. The same approach is found in U.C.A., 1953, § 76–6–203 (1978 edition), aggravated burglary, and § 76–6–302, aggravated robbery (1978 edition). In these statutes the presence of a deadly weapon or even a facsimile of a deadly

weapon is sufficient to elevate the offense to a first degree felony without evidence of the actual intent or knowledge of the accused. The return to this "strict liability" approach in the arson statutes when there is a high risk of danger to human life is reminiscent of the early common law pattern of manifest criminality. *See* G. Fletcher, Rethinking Criminal Law §§ 2.2, 3.2.3, 3.2.4 (1978).

the crime and higher penalty) instead of the arson statute which is designed specifically to deal with arson for the purpose of defrauding an insurer.

The majority opinion construes the aggravated arson statute, U.C.A., 1953, § 76–6–103(1)(a), to mean that it is a second degree felony for one to intentionally burn or cause fire damage to one's own habitation although there is no evidence whatsoever of any intention or even threat to harm another or the property of another, or to defraud an insurance company. In so doing, the majority overrides the plain language of the statute, its common-law roots, a long line of decisions construing similar arson statutes to the contrary, and contorts the statutory language. Indeed, the majority cites no case in support of its construction of the aggravated arson statute. The majority's survey of other states' arson statutes and this state's prior arson statutes tends to support the view of the dissent and not that of the majority. The legislatures that have intended the result achieved by the majority opinion have used language that makes that policy clear. *See* Ohio Rev.Code Ann., § 2909.02 (Page Supp.1982), referred to in the majority opinion. I think it plain that the Utah Legislature did not intend, and the statute does not permit, one to be convicted of burning his own property when he has no unlawful purpose in doing so.

The aggravated arson statute, Section 76–6–103(1)(a), reads as follows:

> A person is guilty of aggravated arson if by means of fire or explosives he intentionally *and unlawfully* damages:
>
> (a) a habitable structure; . . .
>
> [Emphasis added.]

The term "habitable structure" is broadly defined by U.C.A., 1953, § 76–6–101(2) to mean "any building, vehicle, trailer, railway car, aircraft, or watercraft used for lodging or assembling persons or conducting business whether a person is actually present or not." This provision is part of an integrated statutory scheme which also makes it a crime to intentionally and unlawfully burn (1) *any* property with the intention of defrauding an insurer, § 76–6–102(1)(a) (arson to defraud); (2) the property of another, § 76–6–102(1)(b) (arson of another's property); (3) *any* structure when another person is inside, § 76–6–103(1)(b) (aggravated arson of a structure). Also, § 76–6–104 prohibits a reckless burning which endangers human life or the property of another, the concern which forms the basis of the majority holding.[1] I think it clear that in

---

1. The Utah arson statutes form an interlocking scheme to prohibit various kinds of arson.

   Section 76–6–102 provides:
   Arson.—(1) A person is guilty of arson if, under circumstances not amounting to aggravated arson, by means of fire or explosives, he unlawfully and intentionally damages:
   (a) Any property with intention of defrauding an insurer; or
   (b) The property of another.
   (2) A violation of subsection (a) is a felony of the third degree. A violation of subsection (b) is a felony of the third degree if the damage caused exceeds $5,000 value; a class A misdemeanor if the damage exceeds $1,000 but is not more than $5,000 value; a class B misdemeanor if the damage caused exceeds $250 but is not more than $1,000; any other violation is a class C misdemeanor.
   Section 76–6–103 provides:
   Aggravated arson.—[ (1) ] A person is guilty of aggravated arson if by means of fire or explosives he intentionally and unlawfully damages:
   (a) A habitable structure; or

   (b) Any structure or vehicle when any person not a participant in the offense is in the structure or vehicle.
   (2) Aggravated arson is a felony of the second degree.
   Section 76–6–104 provides:
   Reckless burning.—(1) A person is guilty of reckless burning if he:
   (a) Recklessly starts a fire or causes an explosion which endangers human life; or
   (b) Having started a fire, whether reckless or not, and knowing that it is spreading and will endanger the life or property of another, either fails to take reasonable measures to put out or control the fire or fails to give a prompt fire alarm; or
   (c) Damages the property of another by reckless use of fire of causing an explosion.
   (2) A violation of subsections (a) and (b) is a class A misdemeanor. A violation of subsection (c) is a class A misdemeanor if damage to property exceeds $1,000 value; a class B misdemeanor if the damage to property exceeds $500 value; and a class C misdemeanor if the damage to property exceeds

the context of all the provisions, the aggravated arson statute may not be applied to an owner who burns his own habitation unless he intentionally threatens the life or the property of another.

The aggravated arson statute makes a burning a crime if a person "*intentionally and unlawfully*" damages a habitable structure. The burning in this case was intentional. The critical question in this case is the meaning of the term unlawful. That term implies a purpose of intending harm to another or to another's property. It does not include intent to defraud because that is covered by § 76–6–102.

Where criminal statutes are susceptible to different meanings, they should be construed in light of the common law. *Continental National Bank & Trust Co. v. John H. Seely & Sons Co.*, 94 Utah 357, 77 P.2d 355 (1938). Where the language of a statute is subject to some doubt, reference to common-law principles may provide a valuable clue as to whether a particular situation is controlled by the statute. 2A C. Sands, *Sutherland Statutory Construction* § 50.01 (rev. 3rd ed. 1973). As Lord Coke stated, "To know what the common law was before the making of the statute is the very lock and key to set open the windows of the statute." *State v. Pierson*, 44 Ark. 265, 266 (1884). *See also* 3 *Wharton's Criminal Law* § 352 n. 66 (14th ed. 1980) and cases cited therein.

At common law, arson was the willful and malicious burning of the dwelling house of *another*. 4 W. Blackstone, *Commentaries* *220. It was an offense not against property, but against the habitation or occupancy of property. *Id.*; 3 *Wharton's Criminal Law, supra*, at § 345.

A number of states have aggravated arson statutes which, like Utah's, make unlawful or malicious burning of a habitable structure an aggravated felony, but do not state explicitly whether the statute applies to owners. *E.g.*, Cal.Penal Code § 447a (West 1970); Colo.Rev.Stats., § 18–4–105 (1973); Idaho Code § 18–801 (1979 repl. vol.); Minn.Stat. § 609.561 (1982). *See also* 3 *Wharton's Criminal Law, supra*, § 352 n.

57 and statutes cited therein. Nevertheless, such statutes have been consistently interpreted to not apply to one's own structure in one's own possession, so long as other persons or structures are not placed in danger. *E.g., State v. Varsalona*, Mo., 309 S.W.2d 636 (1958); *Schwartz v. Commonwealth*, 232 Ky. 542, 24 S.W.2d 273 (Ky.App. 1930); *Haas v. State*, 103 Ohio St. 1, 132 N.E. 158 (1921); *People v. De Winton*, 113 Cal. 403, 45 P. 708 (1896); *State v. Sarvis*, 45 S.C. 668, 24 S.E. 53 (1896); *Heard v. State*, 81 Ala. 55, 1 So. 640 (1887); *People v. Gates*, 15 Wend. 159 (N.Y.1836); Annot., "Ownership of Property as Affecting Criminal Liability for Burning Thereof," 17 A.L.R. 1168 (1922).

In *People v. Gates, supra*, at 162–63, the court stated:

The statute does not say that the house, the burning of which in the night time constitutes arson in the first degree, shall be the house of *another*; but such must necessarily be the construction.... According to the literal construction of the section ..., a man might be punished with death for burning his own house in his own possession. I apprehend such was not the intention of the legislature, but that the common law may be called in aid of the definition of the offence .... [Emphasis in original.]

And in *State v. Varsalona, supra*, 309 S.W.2d at 640, the court stated:

[The question is] whether the legislature intended that one would be guilty of a crime punishable by confinement in the penitentiary ... from two to ten years if he burned his own building, even though he did so under circumstances which endangered the life of no person, endangered the property of no other person, and when there was no intent to injure or defraud, and no injury resulted to, any other person or thing.

....

... [These circumstances being expressly provided for in other arson statutes,] [w]e are of the opinion ..., that the legislature would not have pointed out [in those other arson statutes] the

$50 value. Any other violation under subsec-

tion (c) shall constitute an infraction.

instances in which burning one's own property would constitute arson ... and yet have intended by the broad and unrestricted language of [the general arson statute] to make it a felony to burn one's own property irrespective of whether such burning was done under circumstances to bring it within the provisions of the instances so provided . . . .

*See also Stafford v. State,* 33 Ala.App. 163, 31 So.2d 146 (1947) (life tenant in possession not guilty of arson); *Daniels v. Commonwealth,* 172 Va. 583, 1 S.E.2d 333 (1939) (even where a statute expressly applied to "any dwelling house," whether or not the property of the accused, owner who burned his own building not liable for arson); *Haire v. State,* 118 Tex.Cr.R. 16, 39 S.W.2d 70 (1931) (under Texas Penal Code, owner may destroy his own house by fire unless it is within city limits, or is insured); *State v. Murphy,* 134 Or. 63, 290 P. 1096 (1930) (an owner may destroy his own building by fire without being guilty of any crime); *State v. Greer,* 243 Mo. 599, 607, 147 S.W. 968, 970 (1912) ("However reprehensible it might have been for [the owner] to burn his own property, ... it only became a crime because of the intent to injure the insurer of the property . . . .").

A few states with statutes like Utah's have apparently ruled that the statute applies to an owner's own building. *E.g., Turner v. State,* 155 Ark. 443, 244 S.W. 727 (1922); *State v. Hurd,* 51 N.H. 176 (1871). A close reading of these cases, however, makes clear that an essential element of the crime is that the burning be "malicious," and that those courts would not apply the statute to an owner unless he intended harm to the person or property of someone else. Thus, in *Turner v. State, supra,* 155 Ark. at 445, 244 S.W. at 728, the court stated:

Of course, the burning must be maliciously done—that is to say, malicious in the sense of an intention, with bad motive, of violating the law.

And in *State v. Hurd, supra,* at 176, the court stated:

A man may maliciously beat his own horse, ... and he may maliciously burn his own dwelling. If he burns it for the purpose of destroying the home and lives of his wife and children, when they happen without his knowledge to be absent, the burning may be malicious: and there may be malice in other cases.

The word in § 76–6–103 which is the equivalent of "maliciously" is "unlawfully." The majority defines that word to mean "without justification, license or privilege." In the context of the aggravated arson statute that does not support the majority's interpretation. Indeed, it cuts strongly against it. Surely an attribute of ownership of property is the right to destroy it unless it is done for the purpose of defrauding or injuring another in his person or property. One who destroys his own habitation must surely be considered to have a "license or privilege"—indeed a right—to destroy it.

The majority opinion is not only inconsistent, but also lays down a rule that is unconstitutional. Under the due process clause of the Fourteenth Amendment and U.C.A., 1953, § 76–1–501 of the Criminal Code, the prosecution has the burden of proving the element of unlawfulness. Yet contrary to this fundamental principle of the criminal law, and with no authority in support of its position, the majority holds that the *defendant* must prove the absence of unlawfulness by proving compliance with local fire safety ordinances, obtaining of a permit, notifying the fire department, warning neighbors, obtaining assistance in organizing safety precautions, and obtaining an adequate supply of water (majority opinion, p. 641). If the defendant does all this, he "could demonstrate the lawful nature of his activity" (*id.* at 642). That reverses the burden of proof placed on the prosecution by § 76–1–501 and by the federal Constitution. *Mullaney v. Wilbur,* 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975); *In re Winship,* 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). *See also State v. Green,* 86 Utah 192, 40 P.2d 961 (1935); *State v. Harris,* 58 Utah 331, 199 P. 145 (1921).

Other courts have construed the term "unlawfully" or "maliciously" to require

that the burning be done to damage the property of another or to injure another in one's own habitation. In *Reginald v. Bryans,* 12 U.C.C.P. 161 (1862), *quoted in* Annot., 17 A.L.R. 1168, 1170–71 (1922), an Ontario, Canada court stated:

> I think the setting fire to a man's own house must be deemed unlawful within the meaning of the statute, when its apparently inevitable consequences must be injurious to another, and the [accused] knew it.

And in *Heard v. State,* 81 Ala. 55, 57, 1 So. 640, 642 (1887), the court stated:

> Malice is a requisite constituent under the [arson] statutes, as at common law; and an act done by one's self to his own property, no injury resulting to another, cannot be the predicate of legal malice.

*See also Brown v. State,* 285 Md. 469, 403 A.2d 788 (1979); *State v. Long,* 243 N.C. 393, 90 S.E.2d 739 (1956); *Schwartz v. Commonwealth,* 232 Ky. 542, 24 S.W.2d 273 (1930).

Indeed, the Supreme Court of Washington held that state's arson statute unconstitutional because it was not directed to burning another's property, or to defrauding another, or to setting a fire that was in any other way the result of malice because "[n]o conceivable public purpose can be served by the prosecution and punishment of those who set fires for innocent and beneficial purposes." *State v. Spino,* 61 Wash.2d 246, 250, 377 P.2d 868, 870–71 (1963). *Accord State v. Dennis,* 80 N.M. 262, 454 P.2d 276 (1969).

Of course it is a serious offense to burn another's habitation. The aggravated arson statute clearly covers that. But an innocent and harmless burning of one's own habitation was not intended to be a second degree felony. *Cf. Brown v. State,* 285 Md. 469, 403 A.2d 788 (1979). A burning rises to that level of culpability only if the fire was intended to harm others or their property. *See, e.g., Voss v. State,* 204 Wis. 432, 236 N.W. 128 (1931); *People v. Ferlin,* 203 Cal. 587, 265 P. 230 (1928) (owner's house was in possession of tenants). If one sets his habi-

tation afire and fails to take reasonable measures to protect the lives and property of others—which seems to be the central concern of the majority—he is guilty of reckless arson under § 76–6–104.[2]

In the present case, the state does not dispute the defendant's contention that he acted as the owner's agent. Nor does the state contend that the defendant intended to harm other persons or their property by the burning. The evidence only indicates that the owner intended to burn his own home. On these facts, I do not see how a conviction of aggravated arson of a habitable structure can be sustained.

If the real purpose of this prosecution were to punish the defendant for intent to defraud an insurer, he should have been prosecuted for arson to defraud under § 76–6–102(1)(a), which specifically applies to that offense, and includes intent to defraud as an element of that offense. The punishment under that statute, which is a third degree felony, is more commensurate with such a crime than the punishment for aggravated arson of a habitable structure, a second degree felony.

Under the construction which the Court places upon the aggravated arson statute, the State may now charge a person who commits arson for the purpose of defrauding an insurer under both the aggravated arson provision and under the arson to defraud provision. But as a practical matter such cases will always be brought under the aggravated arson statute if the structure is a habitation, as they frequently are, because the elements of the crime are far easier to prove and the punishment greater. The statutory provision outlawing arson with intent to defraud will largely be a nullity. The Legislature never intended such anomalous results.

HALL, C.J., concurs in the dissenting opinion of STEWART, J.

---

2. See footnote 1, *supra.*