STATE v. JIM LONG.

(Filed 13 January, 1956.)

**1. Arson §§ 1, 5—**

It is an essential element of the common law crime of arson that the burning be done or caused maliciously, and the omission of the indictment to so charge is fatal.

**2. Arson § 1—**

The common law crime of arson is an offense against the security of habitation, rather than the safety of property, and it is essential under the common law that the property be inhabited by some person.

**3. Same—**

The offense of common law arson has not been defined by statute in this State, and therefore the common law definition of the offense is still in force here. G.S. 4-1.

**4. Arson § 5—**

An indictment charging that defendant unlawfully, wilfully and feloniously set fire to and burned the dwelling house of a named person, the dwelling being unoccupied at the time of the burning, charges a complete offense and not an attempt, and a conviction thereunder as charged is a misdemeanor and is not a conviction under G.S. 14-67, which relates to an attempt to burn a dwelling house, and is a felony.

**5. Same—**

An indictment charging that defendant unlawfully, wilfully and feloniously set fire to and burned the dwelling house of a named person, the dwelling being unoccupied at the time of the burning, charges the burning of an "uninhabited house" in violation of G.S. 14-144.

**6. Arson § 1—**

An "uninhabited house" within the purview of G.S. 14-144 is a house fit for human habitation, but which is uninhabited at the time.

**7. Arson § 7—**

Where the evidence discloses that the structure the defendant is charged with burning had theretofore been so badly burned before the occurrence in suit that it was not fit for human habitation, the evidence is insufficient

to be submitted to the jury in a prosecution for burning an uninhabited house in violation of G.S. 14-144.

APPEAL by defendant from *Joseph W. Parker, J.*, May Criminal Term 1955 of CUMBERLAND.

Criminal prosecution on a bill of indictment charging the defendant on 1 September 1954 with unlawfully, wilfully and feloniously setting fire to and burning the dwelling house of Mrs. Dan Wheatley, the same being unoccupied at the time of the burning.

The State's evidence tells this story. On 23 July 1954 a dwelling house in the Town of Hope Mills, the property of Mrs. Dan Wheatley, was greatly damaged by fire. J. D. Snipes, Chief of Police of the Town, was the first witness for the State. On direct examination he was not questioned as to the condition of this house after that fire, and before the fire of 1 September 1954. On cross-examination he testified: "This house was burned July 23, 1954. On July 23, 1954, a little more than a month before, five or six weeks before September 1, this house was damaged considerably beyond living. It was damaged considerably beyond living. The house was so badly burned that it couldn't be lived in." Chief Snipes further testified that no one lived in the house after this fire. On redirect examination he testified that no one was living in the house on 1 September 1954.

Maurice Odom was the second witness for the State. On direct examination he gave no testimony as to the condition of this house after the fire of 23 July 1954 and before the fire of 1 September 1954. On cross-examination he said this house was destroyed by the fire of 23 July 1954, and that no one lived in it after that fire.

W. B. O'Daniels, a member of the State Bureau of Investigation, was the last witness for the State. The fire on 1 September 1954 burned only a spot in the left front of this house before it was extinguished. On direct examination O'Daniels testified that he rode by this house in January 1955, and this was its condition then as he saw it: the cement foundation was apparently in good condition, the back and right side had been damaged by fire, the left corner, the walls and a portion of the roof were still intact, the room on the right front, a part of the living room and a portion of the back off the porch were intact. On cross-examination he gave testimony in substance as follows: the house, except the right front room, could not be occupied. The roof of the right front room was burned and caved in, cold air would come in through the roof, and possibly rain—he thought it would leak. In this room most of the windows were burned or broken out. The front room could not be lived in by a normal person without repairs. A person

down and out could live in this room, if necessary, but it would be like living in a cave.

The evidence for the defendant tended to show these facts: after the fire of 23 July 1954, this house was a total loss to the insurance carrier and incapable of sheltering human beings or of being lived in as a dwelling house. The house "was just gutted and collapsed."

About 8:00 p.m. on 1 September 1954, the defendant Long and Maurice Odom went to the home of Robert (Cooter) Tyson, which is located in close proximity to the burned Wheatley House. The defendant went into the Tyson House, and came out with oil-soaked rags, and said to Odom, "he was going to finish burning that house, this house here that is burnt." Odom replied: "Not with me with you, because I aint never been in no trouble. I don't want to get in no trouble and I am not going to be with you, if you burn it." Odom ran away, and when he turned a corner, he saw the defendant crawling through a hole under the Wheatley House. Some 30 minutes later a fire alarm sounded, and Odom went back to the Wheatley House. Upon arrival he saw a small place on the left front part of the Wheatley House burning. Odom testified that the part of the house he saw burning was about as far from the hole under the house he had seen the defendant crawling through, as he was on the witness stand from the prosecuting officer.

As a result of information he received, J. D. Snipes, Chief of Police of Hope Mills, drove to the Wheatley House, and saw the left-hand corner of the front of the Wheatley House smoking and blazing. He turned in a fire alarm. The fire truck of the town soon arrived, and extinguished the blaze in a few minutes.

Odom told W. B. O'Daniels, a member of the State Bureau of Investigation, what he saw the defendant do at the Wheatley House on 1 September 1954, and what he heard him say. The morning the case was tried in the Superior Court, the defendant said to Odom: "What you say, Rat? I'll get you."

Plea: Not guilty. Verdict: Guilty, as charged.

From judgment of imprisonment the defendant appeals, assigning error.

*William B. Rodman, Attorney General, Claude L. Love, Assistant Attorney-General, and F. Kent Burns, Staff Attorney, for the State.*
*Chas. G. Rose, Jr., for Defendant, Appellant.*

PARKER, J. It is an essential element of the common law crime of arson that the burning was done or caused maliciously. *S. v. Laughlin,* 53 N.C. 455; *S. v. Porter,* 90 N.C. 719; *S. v. McCarter,* 98 N.C. 637, 4 S.E. 553; 4 Am. Jur., Arson, Sec. 2; 6 C.J.S., Arson, Sec. 1; Wharton's

Crim. Law, 12 Ed., Vol. 2, Sections 1051 and 1059; Miller's Crim. Law (Hornbook Series), p. 323; Curtis, The Law of Arson, Sections 1 and 68.

As a general rule an indictment for the common law crime of arson must allege that the burning was done maliciously. The omission to so charge is a fatal defect. *D'Allesandro v. Tippins,* 101 Fla. 1275, 133 So. 332; *Kellenbeck v. State,* 10 Md. 431, 69 Am. Dec. 166; *Commonwealth v. Cooper,* 264 Mass. 378, 162 N.E. 733; *Jesse v. State,* 28 Miss. 100; *Maxwell v. State,* 68 Miss. 339, 8 So. 546; *Reed v. State,* 171 Miss. 65, 156 So. 650; *S. v. Gove,* 34 N.H. 510; *S. v. Mutschler,* 55 N.D. 120, 212 N.W. 832; *S. v. Pedie,* 58 N.D. 27, 224 N.W. 898; *S. v. Murphy,* 134 Oregon 63, 290 Pac. 1096; *Tuller v. State,* 8 Tex. Court of Appeals 501; *People v. Perez,* 35 Puerto Rico 951; 6 C.J.S., Arson, Sec. 18; 4 Am. Jur., Arson, Sec. 31; Wharton's Crim. Law, 12th Ed., Vol. 2, Sec. 1072; Curtis, The Law of Arson, Sec. 169; Bishop's Directions and Forms, Sec. 179. See: *S. v. Anderson,* 228 N.C. 720, 722, 47 S.E. 2d 1, where it is said the common law arson bill charged: "(1) The wilful and malicious burning of the dwelling house of Willie Belle Cratch" *et al.;* and indictment in *S. v. Clark,* 52 N.C. 167, in the original record in the Clerk's Office.

Arson, at common law, is an offense against the security of habitation, rather than the safety of the property. It was intended to protect the habitation of man, and the crime was not committed, unless the house was inhabited by some person. An uninhabited house is not subject to common law arson. We omit any discussion of a temporary absence, or of a man setting fire to his own dwelling house, as not relevant. *S. v. Clark, supra; S. v. Gailor,* 71 N.C. 88; 6 C.J.S., Arson, Sec. 9; Curtis, The Law of Arson, Sections 3 and 13. See: *S. v. Sarvis,* 45 S.C. 668, 24 S.E. 53, 55 Am. St. Rep. 806, 32 L.R.A. 647.

The General Assembly of North Carolina has provided that any person convicted of common law arson shall suffer death, or life imprisonment if the jury so recommend at the time of rendering its verdict. G.S. 14-58. However, the General Assembly has never defined common law arson. Therefore, the common law definition is still in force in this State. G.S. 4-1.

The bill of indictment does not charge the offense of common law arson, because it does not charge that the act was done maliciously, and because by charging that the house at the time of burning was unoccupied, it negatives the fact that the house was inhabited. *S. v. Clark, supra.* See: *Cox v. State,* 87 Fla. 79, 99 So. 126; *Gilbreath v. State,* 15 Ala. App. 588, 74 So. 723.

It is apparent from the Record that the case was tried below on the theory that the bill of indictment charged a violation of G.S. 14-67. The judge so stated in his charge to the jury. The verdict was guilty

as charged, and the judgment imposed by the court was as provided by G.S. 14-67, and not as provided by G.S. 14-58.

The relevant part of G.S. 14-67 is: "If any person shall wilfully attempt to burn any dwelling house, uninhabited house, . . ., the property of another, he shall be guilty of a felony."

The indictment charges that the defendant unlawfully, wilfully and feloniously set fire to and burned the dwelling house of Mrs. Dan Wheatley, the same being unoccupied at the time of the burning—a complete offense, not an attempt to commit this offense.

In G.S., Chapter 14, Criminal Law, Subchapter IV, Offenses against the Habitation and Other Buildings, Article 15, Arson and Other Burnings (G.S. 14-58 through G.S. 14-69, both inclusive), we find no statute condemning the unlawful and wilful burning of an uninhabited house, though G.S. 14-67 makes the wilful attempt to burn an uninhabited house a felony. However, in the same chapter, Subchapter VI, Criminal Trespass, Article 22, Trespasses to Land and Fixtures, we find G.S. 14-144, which is headed, "Injuring houses, churches, fences and walls," and reads in part as follows: "If any person . . . shall unlawfully and wilfully burn, demolish, pull down, destroy, deface, damage or injure any church, uninhabited house, outhouse or other house or building not mentioned in such article, . . . every person so offending shall be guilty of a misdemeanor."

In our opinion, the bill of indictment properly charges the burning of an "uninhabited house" in violation of G.S. 14-144.

What is the meaning of the words "uninhabited house" as used in that statute?

In *S. v. Clark, supra,* the defendant was properly charged in the bill of indictment with the common law crime of arson. The jury found a special verdict as follows: "That John F. Clark, the prisoner at the bar, is guilty, wilfully and maliciously, of burning the dwelling house in manner and form as charged in the bill of indictment; but that said dwelling house, when burned, was an uninhabited house, though it was built as a dwelling house, and had before that time been inhabited." This Court held that judgment of death could not be pronounced upon the special verdict of the jury, because that verdict found that the house was uninhabited at the time of the burning, but that judgment could be pronounced against the defendant as for a misdemeanor under Sec. 103, Ch. 34, Rev. Code 1854, which is identical in language with the part of G.S. 14-144 quoted above. The Court said: "And we find the Legislature, in Section 103 of the same chapter of the Code, providing that the burning of '*uninhabited houses*' shall be a misdemeanor only. By a reference to this last section it will be perceived, by necessary implication from the context, that the uninhabited house spoken

of is a house that is fitted for habitation but is unoccupied at the time." In *S. v. Lumber Co.*, 153 N.C. 610, 69 S.E. 58, the Court said: "An uninhabited house 'is a house that is fitted for habitation, but is unoccupied at the time.' *S. v. Clark*, 52 N.C. 167."

The State's evidence is uncontradicted that no one lived in this house after the fire of 23 July 1954. *Chief Snipes*, the first witness for the State, testified that the house was so greatly damaged in the fire of 23 July 1954 "that it couldn't be lived in." Maurice Odom, the second witness for the State, testified this house was destroyed by the fire on 23 July 1954. O'Daniels, the State's last witness, testified that only the right front room could be occupied, but that the roof of that room was burned and caved in, cold air would come into that room through the roof, and possibly rain, and that most of the windows of the room were burned or broken out. That this room could not be lived in by a normal person, without repairs. That a person down and out could live in this room, if necessary, but it would be like living in a cave. The State can derive no aid from the defendant's evidence.

In our opinion, and we so hold, the State has offered not a scintilla of evidence that this house after the fire of 23 July 1954 was fitted for habitation.

If it should be contended, which it is not, that the indictment charges a wilful burning of "other house or building not mentioned in such articles" as set forth in G.S. 14-144, the contention would be of no avail, because the State could not avoid a nonsuit on the facts.

In *S. v. Cuthrell*, 235 N.C. 173, 69 S.E. 2d 233, the Court said: "The word 'building' embraces any edifice, structure, or other erection set up by the hand of man, designed to stand more or less permanently, and which is capable of affording shelter for human beings, or usable for some useful purpose. See 4 Am. Jur., Arson, Sec. 16; Curtis, The Law of Arson, Sec. 28, p. 38; 6 C.J.S., Arson, Sec. 6, p. 725; Webster's New International Dictionary, 2d Ed.; Funk & Wagnall's New Standard Dictionary."

The State has offered no evidence that this house after the fire of 23 July 1954 was fit for any useful purpose or habitation.

The defendant assigns as error the action of the lower court in overruling his motion for judgment of nonsuit made at the close of the State's evidence, and renewed at the close of all the evidence. In doing so the lower court committed error.

G.S. 14-144 makes the unlawful and wilful burning of an uninhabited house a misdemeanor. G.S. 14-67 makes the wilful attempt to burn an uninhabited house a felony. It would seem that these two statutes are fit subjects for legislative consideration. If the statute in respect to the burning of an uninhabited house was placed under Ch. 14,

Article 15, Arson and Other Burnings, instead of under Article 22, Trespasses to Land and Fixtures, it would facilitate research, and prevent its being overlooked.

The defendant's motion for judgment of nonsuit will be sustained.

Reversed.