**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Jane DOE (R.S.W.), Defendant–Appellant.**

No. 97–30042.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Nov. 3, 1997.

Decided Feb. 12, 1998.

632

Timothy Cavan, Assistant Federal Defender, Billings, MT, for defendant-appellant.

C. Ed Laws, Assistant United States Attorney, Billings, MT, for plaintiff-appellee.

Before FLETCHER and O'SCANNLAIN, Circuit Judges, and SCHWARZER,* Senior District Judge.

Opinion by Judge SCHWARZER; Dissent by Judge Fletcher.

SCHWARZER, Senior District Judge:

R.S.W., a young Indian person on the Northern Cheyenne Indian Reservation, was found guilty of juvenile delinquency pursuant to 18 U.S.C. § 5032 after a bench trial in the district court for having committed arson in violation of 18 U.S.C. §§ 81 and 1153. We have jurisdiction pursuant to 28 U.S.C. § 1291 and we affirm but on a ground different from that relied on by the district court.

I.

On February 12, 1996, at approximately 10 a.m., a fire occurred at the Morning Star School in Lame Deer on the Northern Cheyenne Indian Reservation in Montana. It caused extensive damage to the building but no one was injured. R.S.W. at that time was twelve years old and in the seventh grade.

Prior to the fire, R.S.W. and a friend went into the girls restroom of the school. Two automatic paper towel dispensers, designed to dispense one paper towel sheet at a time, were located on a privacy partition inside the restroom. As the girls talked, R.S.W. began playing with a lighter she had with her. According to her testimony at trial, first she lit one corner of a paper towel from one of the dispensers. She let the towel burn for a few seconds, then blew out the flame and put the burned towel in the sink. She then returned to the paper towel dispenser and lit the left corner of another towel protruding from it. She let the flame burn for a second

---

* Honorable William W Schwarzer, Senior United States District Judge for the Northern District of California, sitting by designation.

and blew it out. She then lit the right corner of the same towel in the dispenser, blew it out and followed her friend out of the bathroom. The building subsequently caught fire and the school was evacuated. Investigation determined the fire originated in the girls restroom.

The district court found that R.S.W. "knew what she was doing when she lit the paper towel" and "knew the likely result of her conduct would damage the school." It concluded that "the United States had proven beyond a reasonable doubt that the defendant intended to set fire to or burn the Lame Deer High School since she was aware that an unattended fire in a building can result in the building burning." As a result, the district court found R.S.W. guilty and sentenced her to five years probation.

## II.

The question presented by this appeal is what mens rea is required to be proved to establish a violation of the federal arson statute, 18 U.S.C. § 81.[1] The district court did not address the issue directly but its finding implies that it assumed knowledge that burning the building down was a likely result of the act was an element of the offense. We review the district court's construction or interpretation of a statute de novo. *United States v. DeLaCorte*, 113 F.3d 154, 155 (9th Cir.1997).

Section 81 makes it an offense to "willfully and maliciously set[ ] fire to or burn a building." Prior interpretations of "willfully" are not necessarily binding or helpful, for as the Supreme Court has noted, " '[w]illful,' ... is a 'word of many meanings,' and 'its construction [is] often ... influenced by its context.' " *Ratzlaf v. United States*,

510 U.S. 135, 141, 114 S.Ct. 655, 659, 126 L.Ed.2d 615 (1994) (quoting *Spies v. United States*, 317 U.S. 492, 497, 63 S.Ct. 364, 367, 87 L.Ed. 418 (1943)). In analyzing the mens rea requirement of federal criminal statutes, courts "must follow Congress' intent as to the required level of mental culpability for any particular offense." *United States v. Bailey*, 444 U.S. 394, 406, 100 S.Ct. 624, 632, 62 L.Ed.2d 575 (1980).

The legislative history of § 81 is silent as to the intended meaning of "willfully and maliciously." In the absence of any indication to the contrary, we must assume that when Congress adopted the common law definition of the crime of arson-the willful and malicious burning of a building-it intended to adopt the meaning that common law gave that phrase.[2] *Moskal v. United States*, 498 U.S. 103, 116–17, 111 S.Ct. 461, 469–70, 112 L.Ed.2d 449 (1990) (where a federal criminal statute uses a common-law term of established meaning without otherwise defining it, the term must generally be given that meaning); *United States v. Loera*, 923 F.2d 725, 727–28 (9th Cir.1991) ("[t]he common-law meaning of a common-law term used in a federal criminal statute provides a source from which statutory precision may be derived") (citation omitted); *United States v. Juvenile Male*, 930 F.2d 727, 728 (9th Cir. 1991) ("Because 'assault' is not defined in the statute, we have construed it to be equivalent to common law assault."); *United States v. Gullett*, 75 F.3d 941, 947 (4th Cir.), *cert. denied*, —— U.S. ——, 117 S.Ct. 134, 136 L.Ed.2d 83 (1996) ("[I]f Congress uses a common-law term in a federal criminal statute without defining it, we must presume that Congress adopted the common-law definition of that term.").

---

1. The statute provides:

    Whoever, within the special maritime and territorial jurisdiction of the United States, willfully and maliciously sets fire to or burns, or attempts to set fire to or burn any building, structure or vessel, any machinery or building materials or supplies, military or naval stores, munitions of war, or any structural aids or appliances for navigation or shipping, shall be fined under this title or imprisoned not more than five years, or both.

    If the building be a dwelling or if the life of any person be placed in jeopardy, he shall be

imprisoned for not more than 25 years, fined the greater of the fine under this title or the cost of repairing or replacing any property that is damaged or destroyed, or both.

18 U.S.C. § 81 (West Supp.1997).

2. *See* Curtis' Treatise on the Law of Arson § 57 (1936) ("The common law definition of arson-the willful and malicious burning of the property of another-imports two mental elements: willfulness and malice.").

■ At common law, "[a]rson is a crime of general, rather than specific intent and the requirement that the defendant act 'wilfully and maliciously' does not mean that the defendant must have an actual subjective purpose that the act he does intentionally shall produce either (1) setting a fire or burning of the structure or (2) damage to or destruction of said structure." *Dean v. State*, 668 P.2d 639, 643 (Wyo.1983); *State v. Scott*, 118 Ariz. 383, 576 P.2d 1383, 1385 (1978); *see also State v. O'Farrell*, 355 A.2d 396, 398 (Me. 1976); *State v. Bell*, 113 Ariz. 279, 551 P.2d 548, 550 (1976); *United States v. Acevedo–Velez*, 17 M.J. 1, 2 (C.M.A.1983); 6A C.J.S. *Arson* § 6, 223 (1975).[3] "To be a willful act, the setting of the fire must be a conscious, intentional act done knowingly and according to a purpose, as distinguished from a fire that was started by accident or defendant's involuntary act." 5 Am.Jur.2d *Arson and Related Offenses* § 7 (1995); *see also Isaac v. State*, 645 So.2d 903, 908 (Miss.1994) (citing Curtis' Treatise on the Law of Arson); *Dean*, 668 P.2d at 642; *Linehan v. State*, 442 So.2d

244, 247 (Fla.Dist.Ct.App.1983); *Scott*, 576 P.2d at 1385; *State v. Nelson*, 17 Wash.App. 66, 561 P.2d 1093, 1096 (1977). " '[M]aliciously' means that state of mind which actuates conduct injurious to others without lawful reason, cause or excuse." *Dean*, 668 P.2d at 643; *Scott*, 576 P.2d at 1385; *see also* 5 Am.Jur.2d *Arson and Related Offenses* § 7 (1995) (an act "done with a design to do an intentional wrongful act ... toward the public, without any legal justification, excuse or claim of right").[4]

■ At common law, therefore, arson did not require proof of an intent to burn down a building, or of knowledge this would be the probable consequence of the defendant's act. The elements of willfulness and maliciousness are established by proof that the defendant set the fire intentionally and without justification or lawful excuse.[5] Every state jurisdiction with an arson statute containing the generic terms "willfully and maliciously" has so interpreted the statute.[6]

**3.** The dissent agrees that arson at common law is a general intent crime and that willfulness is established by proof that the defendant set the fire intentionally. Dissent at 638–39. While the dissent concedes specific intent is not required, it inexplicably propounds a standard indistinguishable from specific intent, i.e., requiring an intent to burn down the building. Further, it never explains-much less cites authority explaining-just what additional proof is required under the common law to establish the elements of arson. Dissent at 639–40.

**4.** "An intentional act creating an obvious fire hazard to the dwelling of another, done without justification ... might well be characterized as 'wilful' ... and would certainly be malicious, but as the law has developed it is a mistake to assume that the phrase 'willful and malicious,' when found in the definition of common-law arson, adds some distinct requirement not included in the word 'malicious' alone." Rollin M. Perkins and Ronald N. Boyce, *Criminal Law* 275 (3d ed.1982); *see also* John Poulos, *The Metamorphosis of the Law of Arson*, 51 Mo. L.Rev. 295, 323 (1986).

**5.** We agree with the dissent that an arson conviction based on the burning of a building caused by a smoldering cigarette butt tossed into a trash can or by lighted candles placed too close to the drapes should probably be set aside on a Rule 29 motion or on appeal on the ground that it was accidental or that the initial fire was set with justification or legal excuse. Dissent at 639.

But those hypotheticals are distinguishable from the present case which is more analogous to intentionally setting fire to the drapes and then walking away in the (erroneous) belief that the fire had been blown out. While one can argue that that is a close case for the trier of fact, on that evidence the trier of fact would be entitled to return a verdict of guilty.

**6.** Florida, Michigan, Mississippi, Nevada, New Mexico, Oklahoma, South Carolina, Vermont, the Virgin Islands, and West Virginia all have statutes employing the terms "willfully and maliciously." California has arson statutes with two different mens rea: "willfully and maliciously" and recklessly. Although a minority of California Courts of Appeal have concluded that the legislature intended to change the common law mens rea of "willfully and maliciously" to specific intent by criminalizing "reckless arson" as a lesser offense, the majority view supports maintaining the common law's general intent mens rea for the higher offense. *Compare In re Stonewall F.*, 208 Cal.App.3d 1054, 256 Cal.Rptr. 578, 580 (1989), *with People v. Bolden*, 44 Cal.App.4th 707, 52 Cal.Rptr.2d 485, 490–91 (1996); *compare* Cal.Penal Code § 451 (West Supp.1998) (willfully and maliciously), *with* Cal.Penal Code § 452 (West 1988) (recklessly). Thus, certain California cases applying these arson statutes, such as the dissent's only cited case authority, *People v. Fabris*, 31 Cal.App.4th 685, 37 Cal.Rptr.2d 667, 672 (1995), are inapposite to our determination of the common law meaning of "willful and malicious."

Those jurisdictions not following the common law definition either have eliminated "willfully and maliciously" from their statutes[7] or have amended their statutes to include a different definition of that phrase.[8] Given the uniform construction at common law of the "willful and malicious" element, and the absence of evidence to the contrary, we must assume that Congress knew how the common law defined that phrase and intended to adopt that definition in enacting § 81.

We are aware of only one federal appellate decision that has addressed the mens rea requirement under § 81. In *United States v. M.W.*, 890 F.2d 239 (10th Cir.1989), the court affirmed a conviction, holding that a finding that the defendant was "consciously aware that his conduct would result in setting fire to or burning the school building ... established knowing conduct and was, therefore, sufficient to support [the conviction]" under § 81. *Id.* at 241.[9] While we agree with the result reached by the court, we disagree with its reasoning. The court did not address the common law definition of the crime and instead made reference to the Model Penal Code analysis of mens rea. We respectfully reject its analysis which implies a higher mens rea requirement than exists at common law.[10]

### III.

We turn then to the facts. The district court's findings of fact are reviewed for clear error. *United States v. Kohli*, 110 F.3d 1475, 1476 (9th Cir.1997). Evidence is sufficient to support a conviction unless, viewing the evidence in the light most favorable to the prosecution, no rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *United States v. Iriarte–Ortega*, 113 F.3d 1022, 1024 n. 2 (9th Cir.1997) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979)), *modified*, 127 F.3d 1200 (9th Cir.1997). The same test applies to both jury and bench trials. *United States v. Mayberry*, 913 F.2d 719, 721 (9th Cir.1990).

The district court found that R.S.W. set fire to the paper towel intentionally: "she knew what she was doing when she lit the paper towel." This evidence-R.S.W.'s own testimony-is undisputed. There is no suggestion that the fire started as a result of accident or negligence. The finding is not clearly erroneous.

The court went on to find that R.S.W. knew the likely result of her conduct would damage the school. Given that common law arson is a general intent crime, that finding is surplusage. Even if the district court acted under an erroneous assumption with respect to the requisite mens rea, its undisputed findings establish that R.S.W. intentionally, and without justification, set fire to a paper towel in a dispenser attached to a partition in the building. Those findings suffice to support the conviction.

"Normally a judgment will not be reversed where a proper result is reached on the basis of a wrong reason, provided that the defendant suffered no prejudice." *United States v. Castillo–Felix*, 539 F.2d 9, 13 (9th Cir.1976).[11] Even if the district court

---

7. *See, e.g.*, Commentary to Ky.Rev.Stat. Ann. § 513.020 (Banks–Baldwin 1997).

8. For example, Maryland's arson statute contains the terms "willfully and maliciously" but has been amended to include its own definition of maliciously, which requires specific intent. Md. Code Ann. Art. 27 § 5(c) (1997).

9. The district court cited in its conclusions of law the *M.W.* court's statement that § 81 "includes acts done with the knowledge that burning of a building is the practically certain result...." *M.W.*, 890 F.2d at 241.

10. The dissent also implicitly rejects *M.W.*'s reliance on the Model Penal Code by turning to the common law in its analysis. Furthermore, the dissent mistakenly asserts that this opinion "creates a split" with the Tenth Circuit: *M.W.* did not purport to set forth a bottom line standard for mens rea in arson and its holding does not prevent courts in the Tenth Circuit from finding a defendant such as R.S.W. guilty under § 81.

11. *See Garcia v. Bunnell*, 33 F.3d 1193, 1195 (9th Cir.1994) (in reviewing denial of habeas petition, "[w]e may affirm on any ground supported by the record, even if it differs from the reasoning of the district court"); *United States v. Lehman*, 792 F.2d 899, 901 (9th Cir.1986) (appellate panel "may affirm ... on any ground supported by record"); *United States v. Click*, 807 F.2d 847, 850 n. 5 (9th Cir.1986) ("It is proper for an appellate court to affirm a correct decision of a

applied a higher mens rea standard than required, R.S.W. suffered no prejudice from its application because the correct standard-general intent-is less stringent, and the lower standard is encompassed within the higher.[12] Applying the correct standard, the district court's relevant findings of fact support R.S.W.'s conviction under § 81.

AFFIRMED.

FLETCHER, Circuit Judge, Dissenting:

I respectfully dissent.

Notwithstanding the statutory mens rea requirement that the defendant act "willfully and maliciously," the majority holds that, under the federal arson statute codified at 18 U.S.C. § 81, the government need not prove that the defendant had any intent whatsoever to burn a building, effectively construing the statute as establishing a strict liability offense. Majority at 634. This interpretation runs counter to overwhelming precedent, defies reason and common sense, and creates a split with the only other circuit to interpret § 81.

The majority affirms R.S.W.'s arson conviction under § 81 on a basis different from the one relied upon by the district court.

See Majority at 634. The district court followed the interpretation of § 81's intent requirement of "willfully and maliciously" adopted by the Tenth Circuit in *United States v. M.W.*, 890 F.2d 239 (10th Cir.1989).[1] That case interprets the "willfully and maliciously" requirement in § 81 as "includ[ing] acts done with the knowledge that burning of a building is the practically certain result: a person acts knowingly with respect to a material element of an offense [ ] ... if the element involves a result of his conduct [and] he is aware that it is practically certain that his conduct will cause such a result." *Id.* at 240–41 (citations and internal quotation marks omitted); *see also* Devitt & Blackmar, Federal Jury Practice and Instructions § 22A.05 (Arson, 18 U.S.C. § 81) ("As used in these instructions, the term 'willfully and maliciously' means either to knowingly set fire to or burn a building, structure, vessel or machinery deliberately and intentionally ('on purpose'), or to act with the knowledge that burning a building, structure, vessel or machinery is practically certain to result."). The majority, by contrast, fashions its own novel construction, purportedly derived from the common law.[2]

---

lower court even when that decision is based on an inappropriate ground."); *see also Helvering v. Gowran*, 302 U.S. 238, 245–47, 58 S.Ct. 154, 158, 82 L.Ed. 224 (1937) ("In the review of judicial proceedings the rule is settled that, if the decision below is correct, it must be affirmed, although the lower court relied upon a wrong ground or gave a wrong reason.").

12. This is not a case where as the result of the trial court's application of the wrong standard, the conviction was not supported by evidence required under the correct standard. Reference to the wrong standard here merely led the court to make surplus findings, in addition to those required for the conviction. *Cf. Wilson v. United States*, 250 F.2d 312, 324–25 (9th Cir.1958) (reversing conviction at bench trial when district judge applied erroneous standard of law and correct standard would require findings not made by the district court).

1. The Tenth Circuit in *United States v. M.W.* derived its construction of § 81 by analyzing under the Model Penal Code two Arizona state cases interpreting an arson statute that similarly included a mens rea of "willfully and maliciously." *See* 890 F.2d at 241 (contrasting *Grable v. Varela*, 115 Ariz. 222, 564 P.2d 911, 913 (1977) (intentionally setting a grass fire that spread out

of control to burn a house was merely reckless and therefore insufficient to satisfy the intent requirement), with *In re Appeal in Pima County Juvenile Action*, 116 Ariz. 519, 570 P.2d 206, 208–09 (1977) (assistance in setting a fire with the knowledge that a codefendant intended to burn a building was sufficient to satisfy the intent requirement)).

2. It is worth noting as a threshold matter that the majority skims over both textual analysis and review of legislative history in its haste to reach the conclusion that Congress encoded the common law in § 81. Only one sentence is devoted to textual analysis, in which the majority completely ignores the term "maliciously" and selectively quotes a Supreme Court case to support the proposition that interpretations of "willfully" are not binding or helpful. Majority at 634 (citing *Ratzlaf v. United States*, 510 U.S. 135, 141, 114 S.Ct. 655, 659, 126 L.Ed.2d 615 (1994)). In fact, the Supreme Court in *Ratzlaf* warned that judges should hesitate to treat statutory terms "as surplusage," and that "resistance should be heightened when the words describe an element of a criminal offense." 510 U.S. at 140–41, 114 S.Ct. at 659; *see also, e.g., State v. Long*, 243 N.C. 393, 90 S.E.2d 739, 741 (1956) ("It is an essential element of the common law crime of arson that the burning was done or caused maliciously.").

At common law, arson "is the wilful and malicious burning of the dwelling place of another." *Wharton's Criminal Law* § 334 (15th ed.1995). As such, "[a]rson was one of the earliest felonies in which the mental element was stressed." John Poulos, *The Metamorphosis of the Law of Arson*, 51 Mo. L.Rev. 295, 319 (1986) (internal quotation marks and footnote omitted). The required intent "cannot be inferred from the mere act of burning," 5 Am.Jur.2d *Arson and Related Offenses* § 48 (1995), although it may be inferred from such facts as the defendant's removal of "most of the contents of the building shortly before the fire," "threats to destroy the property later burned," and "ill will, unfriendly relations and trouble between the defendant and the owner of the property burned," *id.* (citing numerous cases).

"Absent evidence to the contrary, it is assumed that every burning is accidental and not the result of criminality. Therefore, the burden is on the prosecutor to show that it was wilful and malicious." *Wharton's* § 337; *see also State v. Whisler*, 231 Iowa 1216, 3 N.W.2d 525, 527 (1942) ("It must be established [to sustain an arson conviction] that the burning was willful and malicious and was not an accidental burning.... In the absence of such proof the presumption obtains that the fire was accidental, or at least that it was not of criminal origin.") (citations and internal quotation marks omitted); *Commonwealth v. Mezzanotti*, 26 Mass.App.Ct. 522, 529 N.E.2d 1351, 1355 (1988) ("Excluded from that concept [of malice] are acts that are lawful or the result of an accident or mistake."); *State v. Baker*, 115 Vt. 94, 53 A.2d 53, 55 (1947) ("The mere fact of the burning of a building is not sufficient to establish the corpus delicti, for ... it will be presumed that the fire was the result of accident or some providential cause, rather than the result of criminal design.") (common law offense subsequently superceded by statute). The majority begins well enough by

citing numerous sources articulating this same standard. *See* Majority at 634–35.

Inexplicably, the majority then concludes, without any citation to authority, that "[a]t common law, therefore, arson did not require proof of an intent to burn down a building, or of knowledge this would be the probable consequence of the defendant's act." Majority at 635. This conclusion directly contradicts the authority that the majority cites. It is basic hornbook law that "[t]o constitute arson, there must be an intent to burn a building or other structure, and [the] accused must be consciously aware that his conduct is of such a nature that fire would result." 6A C.J.S. *Arson* § 6 (1975); *see also* Rollin M. Perkins & Ronald N. Bryce, *Criminal Law* 276–77 (3d ed. 1982) ("[T]he state of mind which constitutes guilt of common law arson ... is either an intent to burn the dwelling of another, or an act done under such circumstances that there is obviously a plain and strong likelihood of such a burning.").

The majority goes on to state correctly that the intent requirement for arson is met by proof that the defendant set fire to the building "intentionally." Majority at 635. Unhappily, the majority mistakenly applies that standard, not to the proscribed conduct of setting fire to a building, but to R.S.W.'s mental state toward setting the paper towel aflame. *See* Majority at 636. In other words, the majority proposes under the mantle of the common law that, to sustain a conviction under § 81, a defendant need not have any criminal intent bearing on the proscribed conduct of burning a building as long as the defendant's voluntary actions were the cause in fact of the burning.

The majority's conclusion demonstrates a profound misunderstanding of the common law. As the classic treatise on common law arson explains: "An intent to burn a building may be distinguished from an intent to burn its contents. If it appears that the accused had merely an intent to set fire to the contents, he cannot be convicted under an indict-

With regard to legislative history, the Tenth Circuit, like the majority, bemoaned the lack of anything conclusive. *See M.W.*, 890 F.2d at 240. Nevertheless, it is perhaps notable that as part of the consolidation in 1948 of two previous offenses into the new federal arson statute codified

at § 81, the separate intent requirements for those offenses-"willfully and maliciously" for section 285 but only "maliciously" for section 286– were reconciled as the ostensibly higher mens rea of "willfully and maliciously." *See* 18 U.S.C. §§ 464, 465 (1940).

ment which alleges a criminal intent to burn the building." Arthur F. Curtis, *A Treatise on the Law of Arson* 81 (1936). The treatise goes on to provide a hypothetical with facts nearly identical to those in the instant case: "This is well illustrated by a case where the prisoner threw pieces of lighted paper in a postoffice letter box in a house with the intent of burning the letters, but not the house, and it was thought that he was not guilty of felonious arson." *Id.*

Modern cases as well continue to follow this rule. *See, e.g., Grable v. Varela*, 115 Ariz. 222, 564 P.2d 911, 913 (1977) (holding that intentionally setting a grass fire that spread out of control to burn a house was insufficient to satisfy the arson statute's intent requirement of "willfully and maliciously"); *People v. Fabris*, 31 Cal.App.4th 685, 37 Cal.Rptr.2d 667, 672 (1995) (explaining that, although arson is not a "specific intent" offense,[3] conviction nevertheless "requires an intent to burn a structure when the burning is caused by the act of setting fire to a substance which is not itself the subject of the arson statute"); *T.E. v. State*, 701 So.2d 1237, 1237–38 (Fla.Ct.App.1997) (holding that the burning of a wooden shack caused by a boy who ignited a piece of paper at the end of a metal pipe was insufficient to meet arson statute's intent requirement of "willfully and maliciously"); *People v. Lindsey*, 83 Mich. App. 354, 268 N.W.2d 41, 42 (1978) (overturning arson conviction despite evidence that fire was started by human means with the use of paper because "an inference that the fire was negligently started ... appears equally as plausible as the prosecution's in- · ference that the fire was wilfully and maliciously set by the defendant"); *Isaac v. State*, 645 So.2d 903, 907–09 (Miss.1994) (holding that the accidental burning of the door to an apartment by lighting a towel with a cigarette is not arson); *see also, e.g., Walters v. Government of the Virgin Islands*, 172 F.R.D. 165, 168 (D.Vi.1997) (construing arson as the malicious burning of "any building of another with the intent to destroy it"); *Veverka v. Cash*, 318 N.W.2d 447, 450 (Iowa 1982) (explaining that common law arson requires a "general intent to burn a building"); *Stokes v. State*, 86 Okla.Crim. 21, 189 P.2d 424, 427 (1948) (construing arson as "wilful and malicious burning of a building with intent to destroy it"), *as modified*, 86 Okla. Crim. 21, 190 P.2d 838, *overruled on other grounds by Parker v. State*, 917 P.2d 980, 986 (Okla.Crim.App.1996); *State v. Nelson*, 17 Wash.App. 66, 561 P.2d 1093, 1095 (1977) (explaining that common law arson requires "a general malice or intent to burn some structure").

Common sense dictates that an arson conviction requires more than a building burned by a smoldering cigarette butt tossed into a trash can or by lighted candles placed too close to the drapes. Yet, these hypotheticals are indistinguishable from the facts in the instant case.[4]

As recounted by the majority, on the morning of the fire, R.S.W. was playing with a lighter while talking to a friend in the girls restroom at school. After twice lighting and then extinguishing the edge of a paper towel protruding from a dispenser attached to a privacy partition inside the restroom, R.S.W.

---

**3.** Contrary to the majority's puzzling assertion, Majority at 635 n. 6, the California Court of Appeals in *People v. Fabris* held that its arson statute codified a "general intent" crime. *See* 37 Cal.Rptr.2d at 675 ("[A]rson can be categorized as a general intent crime."); *see also id.* at 672 ("*Stonewall F.* [208 Cal.App.3d 1054, 256 Cal. Rptr. 578 (1989),] does not characterize arson as specific intent crime.").

**4.** The majority vainly attempts to explain away these hypotheticals by suggesting that such fires would be "accidental" or "set with justification or legal excuse." Majority at 635 n. 5. However, these assertions assume the conclusion. Legal excuse or justification is what keeps exploding a building for demolition purposes from constituting arson, and does not properly affect analysis of the mens rea. Moreover, intentionally lighting a cigarette is not legally excused or justified, for example, in hospitals and most office buildings and schools, just as it may not be legally excused or justified for a draft protester to burn his draft card at city hall.

Of course, one can commit arson with a cigarette under the right circumstances (e.g., intentionally and with a gallon of gasoline). On the other hand, cigarettes and paper towels, even if intentionally ignited without legal excuse, may cause a fire that ultimately burns down a building through carelessness or negligence. This is not arson. Nothing in the record suggests that the burning in the instant case is any less "accidental."

for a third time lit the edge of the paper towel and, prior to leaving the restroom with her friend, once again blew the flame out.

After leaving the restroom, R.S.W. and her friend purchased a soft drink from a machine located just outside the restroom and then proceeded to wander through the halls of the school. Eventually, they went to and participated in a gym class. R.S.W.'s friend testified that R.S.W. seemed "panicky and scared" in response to the news that the school had to be evacuated on account of a fire originating in the girls restroom. At trial, the Deputy Fire Marshall who investigated the case testified that it would have been possible for a flame on the paper towel that had been blown out to reignite if supplied with a new oxygen source, such as the one that could have resulted from opening and closing the door as the girls left the restroom.

Nothing in the record suggests that R.S.W. thought that the smoldering paper towel would reignite and cause a blaze that would ultimately consume the school. R.S.W. and her friend did not run or attempt to hide in anticipation of a fire, or stay and observe whether some type of fire would, in fact, occur. Instead, they purchased a soft drink from a machine located outside the restroom, and then walked the halls of the school before attending a gym class. The girls' conduct is inconsistent with and clearly does not support the finding that R.S.W. knew that her conduct would result in the school burning down.

The factual finding relied on by the district court to support its conviction of R.S.W. was that she "was aware that an unattended fire in a building can result in the building burning." This factual finding, however, does not meet the mens rea of knowledge with "practical certainty" as to the result adopted by the district court from the Tenth Circuit as its standard. In other words, under the district court's legal standard, R.S.W. could not as a matter of law have been convicted based upon the factual finding it cited as determinative.

The majority selectively quotes a different factual finding than the one relied on by the district court as satisfying the intent requirement of § 81: that R.S.W. "knew the likely result of her conduct would damage the school." Majority at 636. This finding, however, is not supported by the record. The record certainly shows that R.S.W. demonstrated a serious lack of judgment. She should have known better. She may have even been reckless. But, nothing in the record remotely suggests that she knew that her actions would cause the school to burn down.

The majority appears to acknowledge as much, but then in retreat suggests that even if the district court erred in its finding, "[g]iven that common law arson is a general intent crime, that finding is surplusage." Majority at 636. The majority is wrong as to the law.

While it is true that common law arson is not a "specific intent" crime, it does not follow that an arson conviction requires nothing more than the lowest form of "general intent." The phrase "general intent" encompasses many forms of the mental state requirement not designated by "specific intent," or "purpose." *See* Wayne R. LaFave & Austin W. Scott, *Substantive Criminal Law* § 3.5(b), (e) (1986); *see also United States v. Bailey*, 444 U.S. 394, 405, 100 S.Ct. 624, 632, 62 L.Ed.2d 575 (1980) ("In a general sense, 'purpose' corresponds loosely with the common-law concept of specific intent, while 'knowledge' corresponds loosely with the concept of general intent.").

The term of art, "intentional," on the other hand, as used to describe the common law offense of arson, has traditionally been defined to include both purpose and knowledge, "and thus it is usually said that one intends certain consequences when he desires that his acts cause those consequences or knows that those consequences are substantially certain to result from his acts." LaFave & Scott § 3.5. Only with this understanding then does it become clear why, as applied to arson, "[m]alice is the deliberate and intentional firing of a building, or other defined structure, as contrasted with an accidental or unintentional ignition thereof." 6A C.J.S. *Arson* § 8 (1975).

Although the majority claims that its interpretation of "willfully and maliciously" is rooted in the common law definition of arson, *see* Majority at 635, the majority gravely misconstrues the authority on which it purports to rely, and arrives at an interpretation bearing no resemblance to the common law crime of arson and requiring no criminal intent with regard to the proscribed conduct of burning a building. Under the proper mens rea standard, the findings of the district court, even if they were supported by the record, could not ·as a matter of law sustain a conviction for arson pursuant to § 81. I would reverse.

